## J. J. SETTEGAST ET AL. v. HOUSTON, OAK LAWN & MAGNOLIA PARK RAILWAY COMPANY.

### Decided April 4, 1905.

**1—Railroads—Condemnation—Damage to Abutting Property—Remedy.**

Under the provision of the Constitution that no person's property shall be taken or damaged for public use without adequate compensation, to be secured, where the property is taken, by a deposit of money, a railroad company which, with the consent of the city, lawfully constructs and operates its road along a public street, is not required, as a condition precedent to the construction of its road, to institute condemnation proceedings against abutting property owners whose property it damages but does not take, their remedy being by an ordinary action of damages against the road for the injury done to their property. Const. art. 1, sec. 17.

**2—Same—Measure of Damages—Future Increased Burdens.**

In such an action by the property owners the measure of damages is the depreciation in the value of the property, and this must be held to include every

element of damage, both present and prospective, which might reasonably result from the acts complained of and the continued operation of the road, and a subsequent suit can not be maintained for additional damages resulting from an increased service which augments the burden and injury to the abutting property.

### 3—Same—Res Adjudicata—Receiver's Sale.

Where owners of abutting property obtained a judgment for the damages occasioned thereto by the construction and operation of a railroad in the street, and thereafter intervened in a receivership proceeding against the defendant railroad company and sought to have the judgment allowed as a claim with preference lien, and the decree entered therein allowed the claim but gave no priority or lien and provided for the sale of all the property and rights of the company, the purchaser to take title free of all claims and liens, the decree was res adjudicata as to the rights of such owners and they were estopped to maintain a suit against the purchaser on the unpaid judgment and also on their claim for additional damages resulting from an increased use of the road by the purchasing company.

Appeal from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*Stewart, Stewart & Lockett,* for appellants.—1. The grant to a railroad company of the right of way over a street is subject to the right of abutting property-owners to recover damages to their property, caused by the new servitude. Railway Co. v. Fuller, 63 Texas, 471; Railway Co. v. Hall, 78 Texas, 171; Rosenthal v. Railway Co., 79 Texas, 328; City of Cleburne v. Railway Co., 66 Texas, 461; Railway Co. v. Downie, 82 Texas, 386; Gray v. Railway Co., 13 Texas Civ. App., 163; Dilworth v. State, 36 S. W. Rep., 276; Elliott on Roads and Streets, 526-533; Mills on Eminent, sec. 144; Mercantile Trust Co. v. Railway Co., 29 Fed. Rep., 72; 19 Am. and Eng. Ency. of Law, p. 761, note 4.

2. The appellee claiming under the old Houston Belt & Magnolia Park Railway Co., having succeeded to its right by purchase of its property, and still occupying and using the street in front of the property of appellants, and by its own acts continuing the same damage to the same property as was done by such former company, which damages are represented by the judgment recovered against said old company, compensation for which damages has never been paid, should be held to possess it *cum onere;* that is to say, subject to payment of the damages assessed by the former judgment. Railway Co. v. Ortiz, 75 Texas, 608; Pennsylvania Mut. Life Ins. Co. v. Heiss, 33 Am. St. Rep., 281; Pfeifer v. Sheboygan Ry. Co., 86 Am. Dec., 751, and notes; City of Dallas v. Barksdale, 83 Texas, 121; Gilman v. Sheboygan Ry. Co., 37 Wis., 319; Organ v. Memphis Ry. Co. (Ark.), 11 S. W. Rep., 96; Stickley v. Ry. Co., 20 S. W. Rep., 261; Buffalo Ry. Co. v. Harvey, 107 Pa. St., 319; Philadelphia Ry. Co. v. Cooper, 105 Pa. St., 239; Drury v. Midland R. R. Co., 127 Miss., 171.

3. The judgment recovered by the property-owners for damages to their property against the Houston Belt & Magnolia Park Railway Company was not a lien in the ordinary sense, and their claim was not liable to be divested by the sale in the receivership proceedings. Rio Grande & Eagle Pass Ry. Co. v. Ortiz, 75 Texas, 608; Railway Co. v. Johnston, 95 Pa. St., 294; Catlin v. Robinson, 2 Watts, 378; Buffalo, etc., Ry. Co.

v. Harvey, 107 Pa. St., 319; Pennsylvania Mut. Life Ins. Co. v. Heiss, 33 Am. St. Rep., 281; Gilman v. Sheboygan, 37 Wis., 319.

4. If the railroad company build in a different plan from that on which damages have been assessed, increased damages can be recovered. Railway Co. v. Necco,.15 S. W. Rep., 1102; Fort Worth, etc., Ry. Co. v. Jennings, 13 S. W. Rep., 270; Railway Co. v. Hopson, 15 Texas Civ. App., 126; Morrow v. St. Louis, A. & T. Ry. Co., 17 S. W. Rep., 44; Rische v. Texas Trans. Co., 66 S. W. Rep., 327; Llano Co. v. Scott, 2 Texas Civ. App., 408; Parker Co. v. Jackson, 5 Texas Civ. App., 36; Humphreys v. Fort Smith, etc., Co., 71 S. W. Rep., 662.

5. While the appellee, by its purchase of the right to use the street for railroad purposes, and in the exercise of such purpose could build its railroad of heavier material, and use heavier engines and cars, and construct switches in front of the property of appellants, yet, while it may have the legislative permission to do such acts, if the doing of such acts places an additional burden on the street, which causes an additional damage to the property of appellants, the permission is granted, subject always to the right of the abutting property-owners to recover damage caused by such acts. Railway Co. v. Necco, 15 S. W. Rep., 1102; City of Cleburne v. Railway Co., 66 Texas, 461; Railway Co. v. Fuller, 63 Texas, 471; Railway Co. v. Hall, 78 Texas, 171; Rosenthal v. Railway Co., 79 Texas, 325; Hamilton Co. v. Garrett, 62 Texas, 606; Railway Co. v. Downie, 82 Texas, 386; Railway Co. v. Jennings, 13 S. W. Rep., 271; Wood, Railway Law, p. 271 et seq.; Pierce on Railroads, p. 232.

*J. A. Read, A. L. Jackson* and *Wm. H. Wilson,* for appellee.—1. The words "damaged" and "taken" are not synonymous in the Texas Constitution, nor is there anything in the language of the Constitution or the laws which would indicate that the provision that no person's property should be damaged without compensation being made was intended to abolish the law of res judicata, and limitation with respect to the cause of action there given for such damage. 6 Am. and Eng. Ency. of Law (1st ed.), p. 545, notes 3, 4; Const. of Texas, art. 1, sec. 17; Chicago v. Taylor, 125 U. S., p. 161, 31 Co-Op., p. 638; Rische v. Texas Transportation Company, 66 S. W. Rep., 325; Gray v. Dallas Terminal, 36 S. W. Rep., 354; Cooper v. Dallas, 83 Texas, 241; Myer v. Richmond, 172 U. S., 82, 43 Co-Op., 374, 379, 380; Henderson v. McLain (U. S. Sup. Ct.), 39 Lawyer Co-Op., 350, 351; Northern Transp. Co. v. Chicago, 99 U. S., 635, 25 Co-Op., 336; Merchant v. Pennsylvania R. R. Co., 153 U. S., 380; Gibson v. United States, 166 U. S., 269, 41 Co-Op., 996.

2. Where a receivership sale is made for the purpose of satisfying the claims of creditors, the right of creditors thereafter is to have satisfaction out of the funds so created, and such creditors have thereafter no rights against the property or the successors in title thereto, unless such rights are given by the decree, and a creditor of the receiver, with notice, who fails to assert his claim before the decree of sale, is bound absolutely, and if the receivership sale be in a foreclosure proceeding the holder of a prior title and lien, if made a party to the suit, is absolutely bound by the decree of foreclosure, selling the property free from all

claims, the law being that the foreclosure sale passes the title of all parties to the suit by estoppel. Rev. Stats., arts. 4549, 4550; Williams v. Midland, 55 S. W. Rep., 130; Vieno v. Gibson, 85 Texas, 432; Scott v. Farmers' & M. Nat. Bank, 75 S. W. Rep., 10; Houston, E. & W. T. Ry. Co. v. Keller, 28 S. W. Rep., 725; Howe v. St. Clair, 27 S. W. Rep., 800; Houston, E. & W. T. Ry. v. Norris, 41 S. W. Rep., 709; Leadville Coal Co. v. McCreery (U. S. Sup. Ct.), 35 Law Co-Op., 825; Heffner v. Insurance Co., 123 U. S., 725.

3. The matters and things here alleged as additional burden were all in substance alleged and recovered for in the original action, filed by Settegasts in the receivership proceedings, and the plaintiffs are not entitled in law to recover the same damages again and again. A claim for damages to adjacent property from the construction and operation of railroad accrues at once, when the railroad is first built and operated, and but one action can be filed, which necessarily includes all future damages. Lyles v. Railway Co., 73 Texas, 95; Trube v. Montgomery, 7 S. W. Rep., 20; Missouri, K. & T. Ry. Co. v. Graham, 33 S. W. Rep., 576; Rosenthal v. Railway Co., 15 S. W. Rep., 268.

GILL, Associate Justice.—The Houston Belt & Magnolia Park Railway Company was duly incorporated on April 2, 1889, under the general laws of this State. By its charter its domicile was placed at Houston, Texas, and it was empowered to construct, operate and maintain a single or double-track railway and telegraph line in Harris County, beginning at or near Buffalo Bayou, between the mouths of Bray's Bayou and Long Beach, thence to the City of Houston and along such streets in said city as the city council should define, with such branches as would enable such road to connect with any of the railroads leading to or from said city at any point within the city; the main lines and branches being in all about fifteen miles in length, and the road might be located so that it or any part of it might be used as a belt or connecting line.

In June of the same year it procured from the authorities of the City of Houston the right to construct and operate its proposed road along Commerce and other streets definitely named. By June 24, 1890, it had completed the construction of its lines within the city limits, including its line along Commerce Street, according to the franchise granted by the city. It thereafter completed its line to the named point on Buffalo Bayou, and by January 1, 1891, had begun the operation of its road as a steam railroad. It so continued to operate it until November 3, 1891, when the railroad, and all the property and franchises of the Belt Company were taken in charge by the receiver appointed by the District Court of Harris County, in cause number 14,397, entitled T. D. Cobb v. Houston Belt & Magnolia Park Railway Company. The plaintiffs in that cause were the stockholders of the company and holders of mortgage liens upon the property. For convenience this company will be hereinafter referred to as the Belt Company, and defendant herein will be called the Oak Lawn Company.

On June 3, 1891, and prior to the appointment of a receiver, W. J. and J. J. Settegast filed suit in the District Court of Harris County against the Belt Company for damages to the property described in the

petition in the present suit. In that suit it was alleged in substance that plaintiffs' property abutted on Commerce Street, along and upon which the Belt Company had constructed and was operating its road. That the tracks and rails extended much above the surface of the street, rendering it difficult and dangerous to cross. That by the construction of the road ingress and egress to and from their property was rendered difficult and dangerous, and the street in front of the premises rendered practically useless for purposes of travel. That from the first day of January, 1891, until the time of exhibiting the petition, the company had been operating its locomotives, trains and cars along the street in front of the premises, injuring his property by shaking the houses and filling the same with smoke and cinders from its locomotives, and by their continual noise, night and day, greatly depreciating the value of plaintiffs' property. They further complained that the trains were run at a high rate of speed, rendering the use of the street unsafe. That horses could not be hitched in front of the property without becoming frightened and unmanageable. That their houses were exposed to fire from sparks emitted by locomotives, for all of which their property was depreciated in value in the sum of $10,000, and for which sum they prayed judgment.

There were no allegations of negligence, but the recovery was sought solely on the ground that the damage complained of was the inevitable consequence of the lawful construction and operation of the road. The number of that suit was 14,122. On April 8, 1893, the receiver was made a party defendant by amendment, the other allegations and the prayer remaining the same. On February 21, 1894, there was judgment for plaintiff, by agreement, for $3,213.21 and costs.

On August 7, 1894, W. J. and J. J. Settegast filed their plea in intervention in the receivership case, setting up the judgment as a prior lien on all the property of the company, and praying that it be so allowed, and for general relief. This intervention, with others, was referred to the special master, who found and duly reported to the court that the judgment was valid and subsisting, and classified it as a simple judgment against the company, without lien or preference. The master's report also disclosed the nature of plaintiffs' demand upon which the judgment had been rendered.

The plaintiffs (intervenors) filed exceptions to the master's report, urging, among other things, that, because of the nature of the demand, their judgment should be allowed as a preference claim.

Thereafter, upon application of one of the creditors, and after due notice to all concerned, the property of the company, including its franchises, was decreed to be sold, the purchaser to take title free of all claims and liens of creditors, parties to the suit and intervenors therein, of whatsoever nature and kind, and that the proceeds of the sale be held by the court in lieu of the property sold, the rights and priorities as to the proceeds of the sale to be adjusted, as they should have been, against the property itself. To this decree the Settegast intervenors took no exception, nor did they in any way resist it. The sale was finally made in pursuance of this decree, and H. E. Fuller became the purchaser.

On November 22, 1898, the report of sale coming on to be heard for confirmation, the intervenors, Settegast and others, protested on the

ground of inadequacy of price. Their protest was overruled, the sale confirmed, the consideration paid, and the property duly transferred to the purchaser. To this action of the court the Settegasts and other interveners gave notice of appeal, but never perfected it, nor otherwise sought to review the action of the court.

The court then proceeded to dispose of the receivership as against the fund derived from the sale, and to classify the various claims, including that of the Settegasts. They sought to share in the proceeds, and renewed their insistence that their judgment, by reason of its nature, was entitled to priority over all other claims save those of a like nature. Their contention was overruled, and their judgment classified as a simple claim against the Belt Company and the property in the hands of the receiver without preference or priority. This disposition of their claim was neither excepted to nor appealed from. The property of the company was consumed by the costs and expenses of the receivership and the claims of lienholders, so that the Settegasts got nothing by that proceeding.

Thereafter the defendant herein, a railway corporation organized under the general laws of Texas, purchased from Fuller, for value, all the property bought by Fuller at the receivership sale.

In January, 1901, the Oak Lawn Company practically reconstructed the road, putting in new ties and heavier rails. The old track had sunk to the level of the street, but, as reconstructed, the rails and ties were raised above the level of the street, much as the old road was alleged to be when first constructed. The Oak Lawn Company then began the operation of the road as a commercial railway. It used much larger engines and longer and heavier trains, and the amount of traffic was much greater than it had ever been under the former ownership. Plaintiffs' property was thus damaged to a greater degree by the manner of operating the road than by that of the old company or the receivers.

Up to the time of the Oak Lawn Company's purchase the road had been used largely for passenger and excursion traffic, which was by no means heavy, except at times, and its freight traffic was light and occasional. Its engines were coal-burning "dummy" engines, about one-half or one-third the weight of the engines now used, and its passenger cars much lighter. It is true, however, that under the former management the road connected with the International & Great Northern and the Houston & Texas Central Railways, both large systems with heavy traffic, and the road in question was then occasionally used by the International & Great Northern freight trains, under a special arrangement between the two roads. The Oak Lawn Company has, since its purchase, added to the trackage of the road a switch connecting with a local factory. This switch connects with the main line at a point on Commerce Street in front of plaintiffs' property, and plaintiffs' inconveniences are enhanced by the presence of this switch on account of the stopping and starting of trains at that point in the use of the switch.

By reason of the uses to which the road has been subjected by the Oak Lawn Company, as above stated, the plaintiff has suffered damage to his property in the sum of $4,000, as found by the trial court, in addition to the sum recovered in cause number 14,122 against the Belt Company.

Counsel for the parties have embodied in their brief a statement of the facts at great length and in great detail, setting out at length the pleadings, orders and decrees in the former proceedings. With a view to brevity we have condensed the statement as much as possible consistent with a full and accurate presentation of the case.

J. J. Settegast and the heirs of W. J. Settegast, upon the state of facts above set out, filed this action against the Oak Lawn Company, seeking to recover the amount of the judgment rendered in their favor in cause number 14,122, on the ground that the judgment thus recovered fixed the amount they were entitled to as compensation for damage sustained by their property by the acts of the old company in the construction and operation of the road on Commerce Street. They contended, and here contend, that the damage inflicted amounted to a taking under the Constitution, actual compensation for which was a condition precedent to the right of the old company, or any vendee thereof, to operate the road. They also sought to recover the alleged additional damage due to the use of heavier engines and freight trains, and additional traffic, and the construction and use of the switch above mentioned, all of which they claim amounted to an additional burden upon the street and their property and property rights.

The causes of the additional damage are alleged to be smoke and cinders, the use in part of oil instead of coal for fuel, attended with the emission of more noxious and disagreeable smoke and vapors, additional and more frequent vibration, more frequent obstruction of the street, the frightening of horses, etc., practically as in the petition in cause number 14,122. As in the cause last referred to, plaintiff seeks upon each phase of his pleaded cause of action to recover alone under article 1, section 17 of the Constitution, and does not complain that any of the acts set out as causes of the suffered damage are due to negligence or any unlawful act on the part of the defendant company.

The latter answered by general denial, and pleaded the judgments, orders and decree of sale in the receivership proceedings as *res adjudicata* of plaintiffs' rights, and the sale thereunder, and plaintiffs' connection therewith, and conduct with reference thereto as an estoppel. Purchase for value, in good faith, in reliance on the recitals in the decree, without notice of any other rights of plaintiffs, was also interposed as a defense. Limitation of two, four, five and ten years was also pleaded.

As to the damages sought to be recovered, and alleged to have accrued subsequent to January 1, 1901, the defense was that the damage alleged grew out of lawful acts of the defendant of the same nature and character as those of its predecessor, differing therefrom only in degree, and hence necessarily included in the first judgment.

The court, sitting without a jury, found the facts practically as herein set out, and rendered judgment for defendant on the theory that the judgment in cause number 14,122 included all damages that had then accrued or might thereafter accrue, due to the same general causes, and that the decree disposing of plaintiffs' claim and authorizing the sale of the property and franchises free from such claim was *res adjudicata* of plaintiffs' rights. From that judgment plaintiffs have appealed, and renew their contention here.

In asserting the liability of the Oak Lawn Company for the judg-

ment in cause number 14,122, the appellants seek to bring this case within the doctrine announced in Railway Company v. Ortiz (75 Texas, 608) and Railway Company v. Fuller (63 Texas, 471). In Ortiz' case, supra, a railway company, without resorting to condemnation proceedings, entered upon and appropriated the plaintiff's land for right of way. Thereupon he sued the company for compensation and procured a judgment. The judgment was not paid. Thereafter, in a foreclosure proceeding, the properties of the road were sold, and bought in by another company, which took charge and proceeded with the operation of the road. Plaintiff then sought to hold the purchasing company on the judgment procured against its predecessor. In disposing of the questions Judge Gaines, for the Supreme Court, announced the law to be that the title to the easement over the land taken could not pass until compensation was first made therefor, as required by the Constitution; that the reduction of plaintiff's claim for compensation to a judgment against the first company was not a payment nor an abandonment of his title, and that, as the title thus remained in plaintiff, it did not pass by the foreclosure. The purchasing company was therefore held liable for the judgment, it being also held that, as the amount had been adjudicated between the plaintiff and the first company, the judgment was the measure of the recovery.

This is unquestionably the law in this State as to property actually invaded and appropriated, or "taken," in the sense in which the word is used in article 1, section 17 of our Constitution.

The doctrine is sought to be extended to cases like the one under consideration, where property rights are damaged by the lawful construction and operation of a railway over a public street. To this end certain expressions of Judge Stayton, in Railway Company v. Fuller, supra, are invoked. In that case, as in this, the plaintiff sought to recover for damages sustained by abutting property due to the lawful construction and operation of a railroad on a public street. The suit was resisted on the ground that no such action was maintainable under the Constitution and laws of this State. Article 1, section 17, under which the action was brought, is as follows: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and when taken except for the use of the State such compensation shall first be made or secured by a deposit of money. . . . ."

It thus appears that the sole question up for decision was whether the damages claimed by the plaintiffs were such as were contemplated by the provision of the Constitution, supra. It was noted by the writer of that opinion that the word "damaged" was doubtless added to the section quoted to correct evils which had resulted from a too restricted definition of the word "taken." It is true, the writer says the word "property" is doubtless used in its legal sense, and means not only the thing used, but every right which accompanies ownership and is its incident, and declares that, thus considered, the facts amount to a taking of private property for public use, in which event compensation must first have been made or secured by a deposit of money. If the doctrine thus broadly stated obtained in this State, then abutting owners could enjoin a railway company from constructing a line over a street until compen-

sation was ascertained and made for the injurious effect upon their property, a doctrine which has been distinctly repudiated in Rische v. Transportation Co. (27 Texas Civ. App., 33, 66 S. W. Rep., 325), which met the approval of our Supreme Court.

The true ground upon which Fuller's case, supra, was decided, was that the word "damages," included in the present Constitution, broadened the scope of the provision as embodied in former Constitutions of this State. This is evidenced by the fact that the learned justice, in the course of the opinion, cast some doubt upon the expressions used in the first part of it by saying that, if there had been no taking, the property was unquestionably damaged, and declares the word "damaged" is used in the sense of "injured." This is followed by an accurate definition of the word "damage," and he cites the case of Railway v. Eddins (60 Texas, 656), in which the distinction is clearly made and the rules governing the rights of parties in such cases are accurately laid down.

The portion of the opinion in Fuller's case, supra, relied on by appellant, has been followed in no case in this State to which we have been cited or of which we are aware. On the other hand, in Railway v. Hall (78 Texas, 169), the Supreme Court, in an opinion by Justice Gaines, held that the action was for damages, and not for compensation for a taking. The distinction was peculiarly necessary in that case because the plaintiff was suing for damage to property not abutting on any street or highway, the damages claimed resulting from the operation of a railroad over private property adjoining that of the complainant, the right of way of the company neither invading nor touching the property so damaged. The right to recover was upheld. In the case last cited, Railway v. Fuller, supra, was construed as we construe it, and it was declared that the language of the Constitution was broad enough to give the owner a right of action if his property, though not taken, was damaged either by the construction or operation of the road. It is therefore clear that the case does not sustain the contention of appellant, and that the rule announced in the Ortiz case, supra, must be confined to cases in which there is an actual taking.

We are of opinion, therefore, that the insertion of the word "damaged" in the Constitution, was made in order that persons suffering damage from the lawful construction and operation of public or quasi-public works might have their action for damages though the acts complained of might not come within the definition of the word "taken," and that the insertion of the word conferred a right which, by reason of the legislative grant to do the acts complained of, had not theretofore existed. The right thus conferred was the right to sue for damages for the injury suffered, and not the right to arrest the progress of the work until compensation was made or secured.

We are supported in this conclusion not only by the nature of the evil designed to be met by the insertion of the word, but by the fact that, in the section of the Constitution in which the word occurs, a distinction is made. For damage suffered, compensation is allowed though the property be not taken. But, if taken, except for the uses of the State, compensation must first be made or deposited.

In the one case the railway company may be enjoined until the Constitution is complied with, and acquires no right until the compensation

. is made. In the other, the railway company may proceed with its work, the consent of the city having first been obtained, and the person suffering damage thereby is relegated to the courts to enforce his claim, as in any other civil action. He can not enjoin, and this is true whether the abutting owner holds the fee to the street or merely the incidental right to its use. This point is so fully covered by the able and well-considered opinion in Rische v. Railway Company, supra, that we deem it unnecessary to discuss it further.

We know of no case in which railways have been required to condemn the rights incidentally invaded as a condition precedent to its right to enjoy the permission granted by the city to so use the street. Bearing in mind the rule that, where property is taken by a railway company for right of way, without the consent of the owner and without compensation, the shorter term of limitation does not bar his action, as it would were it merely for damages as for a trespass, there is this further reason for the conclusion we have reached. It is held in Lyles v. Railway Company (73 Texas, 95), that limitation of two years will bar the action for such damages to abutting property. The same doctrine is announced in Rosenthal v. Railway Co. (79 Texas, 325). Many other Texas authorities might be cited to the same effect. It thus becomes clear that the rule as to limitation applicable to ordinary damage suits has been held applicable to suits of this character, thus placing them in the category of ordinary civil actions for damages. This being true, the action is subject to the plea of *res adjudicata* and estoppel, untrammeled by the reasons which controlled the disposition of the Ortiz case, supra. It follows that, whatever remedy the plaintiffs may have as against the property in the hands of the receiver, the terms of that decree protect the purchaser at the sale made thereunder.

The judgment in cause number 14,122 was against the Belt Company. It was presented as a claim against the property in the hands of the receivers, and preference sought for it over other claims. The plaintiffs, in their intervention in that suit, did more than seek the collection of that judgment. They sought to make it a charge upon the property itself which must ultimately have been sold in the progress of the cause. Against the decree of sale, which gave to the purchaser all the property, including the right to the use of the street free of the very claim they now seek to enforce, they made no protest, but contented themselves with an objection to the purchase price as inadequate. The purchasers bought on the faith of the terms of that decree.

To carry appellants' contention in this regard to its logical end would bring us to this: If a number of abutting property-owners, the only creditors of the road, had reduced their damage claims to judgments, and levied on and sold the entire property of the Belt Company, and this defendant had become the purchaser at such sale, and the purchase price had been insufficient to discharge the judgments, they would have been enforceable against the purchaser and successive purchasers under executions issued on the judgments. Or, to put it otherwise, the purchaser under the judgment would not be protected by the decree under which he bought. The proposition carries its own refutation.

As regards the damages suffered since the Oak Lawn Company purchased, they are clearly due to causes which differ not in their nature,

but only in degree, from those originally complained of. The authorities are in accord upon the proposition that, in such actions, the right to recover is at once as broad as the lapse of years can make it (Lyles v. Railway Co., 73 Texas, 95), and the recovery for the depreciation in the value of the property must be held to include every element of damage, both present and prospective, which might reasonably result from the acts complained of and the continued exercise of the powers and duties imposed upon the defendant. The rule is absolute, that the controversy must finally be settled in one timely action. To permit an additional suit whenever a railway company in a lawful way improves its tracks, or increases the weight and quantity of its rolling stock, or the number of its trains, or changes from one character of fuel to another, would amount to a practical abrogation of the rule.

In actions of this sort the measure of damages is the depreciation in the market value of the property. The things which affect this value are what the company has lawfully done, and which, within its corporate powers and duties, it may be expected to do. All these things are therefore taken into consideration in affording the relief sought, and must be held to have been so included in the former judgment.

As to the additional switch, if it be conceded that it constituted an additional burden for which plaintiffs might have recovered, no proof was offered upon which the court could have measured the damage suffered thereby.

For the reasons given, the judgment is affirmed.

*Affirmed.*

Writ of error refused.