**DONNA IRR. DIST. NO. I et al. v. PIPER et al. (No. 7311.)**

(Court of Civil Appeals of Texas. San Antonio. Jan. 7, 1925. Rehearing Denied Feb. 11, 1925.)

1. **Waters and water courses ⬲244—Irrigation district will not be enjoined from strengthening embankments protecting canal.**

Irrigation district will not be enjoined from strengthening embankments protecting canal so as to withstand floods, at instance of owners of lands, on theory that prevention of future destruction of embankments by floods will hold waters on plaintiffs' lands for a longer time than when old embankments were carried away by floods.

2. **Eminent domain ⬲2(10)—Irrigation district's strengthening of embankments held not "taking" of property within constitutional provisions as to compensation for taking of private property.**

Irrigation district's strengthening of embankments protecting canals so as to withstand floods does not constitute the "taking" of property 1,000 or more feet from embankment within provisions of Constitution requiring payment of compensation in advance, though strengthened embankments will hold flood water on such lands, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 5107—24, 5107—78.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Taking (In Eminent Domain).]

Appeal from District Court, Hidalgo County; L. J. Polk, Judge.

Suit by C. L. Piper and others against the Donna Irrigation District No. 1 and others. From order granting temporary writ of injunction, defendants appeal. Reversed and remanded.

Walter G. Weaver, of Donna, and Canales, Davenport & West, of Brownsville, for appellants.

Glasscock & Leslie, of McAllen, for appellees.

FLY, C. J. C. L. Piper and fourteen other residents of Hidalgo county sued the irriga-tion company, its five directors and E. W. Watts, seeking to obtain, first, a temporary injunction, and then upon a final trial to make the temporary injunction permanent, and that a mandatory injunction to the defendants, appellants herein, be issued, "requiring them to abate, remove and destroy the section of said levee heretofore constructed by them, as above described, and that plaintiffs recover their cost." The court upon a hearing granted the temporary writ of injunction, and from that order this appeal has been perfected.

The findings of fact of the trial judge are quite voluminous, covering 30 pages of the transcript, but they may be condensed so as to present all the salient facts in a much shorter space. The appellees, citizens of Hidalgo county, each own a tract of land in size from 40 to 240 acres, and aggregating 1,346 acres. All of the tracts are out of the Alamo Land & Sugar Company's subdivision in said county. The lands are located in what is known as the "first lift" area, except a portion in the "second lift" area or table; all the land being cleared except about 20 acres, and most of the tracts having improvements on them. The tracts are located from 1,000 to 28,500 feet from the levee that appellants are erecting. The irrigation district is duly organized under the laws of Texas, and has a width of 5 miles and a frontage of the same width on the Rio Grande. It extends north from the river 18 miles. E. W. Watts was constructing the levee for the district. The defendants A. J. Molitor, J. C. Wilkinson, R. J. Albough, O. J. Anderson and George Stevens are the directors of the irrigation district, and E. W. Watts is constructing the levee for the other defendants. The levee and lands of appellees are located near the Rio Grande in the irrigated section of Hidalgo county, which has a general slope from the west to the east. At the point where appellees' lands and the levee is located, what is known as the "first lift" from the river is located, which varies from about 2 miles on the west end to about 8 miles on the east end, where the "second lift" terminates and the "first lift" widens into the coastal plain. The bank of the river is the southern boundary of the valley, and it is higher than the "first lift," but lower than the "second lift." Floods occur in the Rio Grande, and the valley is subject to them.

There are "resacas" or natural drainage channels running in an easterly direction and nearly parallel with the river, and they sometimes spread into and form lakes. There is a depression between the banks of the river and "second lift," and during high floods this depression receives the high waters, and never returns them to the river, but carries them to a body of water known as

Laguna Madre. Canals have been constructed across the depression from the pumping plant on the river. The appellant irrigation district has maintained, as did its predecessor, a main canal with walls of earth rising several feet above the surrounding land, which extends toward the north; two openings or resacas being left open in the embankments for the passage of flood waters. Underground syphons convey the waters for irrigation under the breaks in the embankments. The two resacas that are syphoned are the Ruthven, 135 feet in length, and the La Cruz, about 400 feet in length. The first named opening in the embankment of the canal is sufficient to carry all the waters that go into Ruthven resaca, but the drainage channel is not sufficient to carry all the water, and the La Cruz syphon was not sufficient to carry all the water that went into it in the floods of 1919 and 1922. Large openings were made by the flood waters of 1919 and 1922 in the banks of the main canal, and the waters overflowed a large area of land lying east of the main canal. To prevent future breaks in the embankment, the height of the embankments along the Donna main canal for a distance of 24,000 feet are being made stronger, of which 7,400 feet have been completed. The main canal crosses what is known as the Tijera channel. No opening has been left in that, and no opening is contemplated at any point along the 2,400 feet of embankment which is being increased in width from 30 to 40 feet at the base and from a width of 6 feet at the top to a width of ten feet, and the height of the old embankment will be raised on an average of about two or three feet. The top will then be on a level of 90 feet above sea level. The increase in the width and height of the old embankment is for the purpose of protecting the canals and other improvements from being injured or destroyed by floods, and also to protect some 10,000 acres of land from inundation. The greater portion of the lands of appellees have an elevation of from 80 to 85 feet above sea level. In 1919 and 1922 most of the lands of appellees were overflowed; the waters varying in depth from a few inches to 5 feet. The waters remained on the lands from one or two days to about a week. Appellees at that time lost most of their crops. The embankments of appellants washed out for a distance of 1,500 feet. We copy the following findings of the lower court:

"The defendants have constructed the section of about 7,400 feet of said new levee above described directly across the Tijera channel above described, and in such manner as to obstruct and close such channel, leaving no opening therein for the passage of waters, and that at said point said new levee is about 10 or 11 feet in height; and the effect thereof is and will be to close said channel and divert the flow of the waters which have heretofore passed through said channel in such floods as occurred in 1919 and 1922 so that such waters in similar floods can find their outlet only through the La Cruz channel and La Cruz syphon above described; and said La Cruz channel and La Cruz syphon is greatly insufficient in capacity to discharge such waters.

"Further floods in the Rio Grande river and overflow of the waters of the river into and through said 'first lift' area in Hidalgo county, and into and through said 'resaca' system and drainage channels above described, such as occurred in the years 1919 and 1922 are practically certain to occur; and, if the defendants construct the levee involved in this suit, that is, raise the height of the old embankment of the Donna west main canal as above described, as the defendants now have such work in progress and have completed about 7,400 feet in length thereof, and propose to complete same to a total length of about 24,000 feet as above described. The effect thereof is and will be to close and obstruct the Tijera channel as above stated, and to divert, retard, and impound the waters so that the depth of such waters over the respective tracts of plaintiffs' lands will be increased from 1 to 3 feet, being only about 1 foot increased depth on certain tracts of the plaintiffs' lands, and as much as 3 feet increased depth on other tracts thereof, and will cause certain portions of the lands of the plaintiffs which have not heretofore overflowed to overflow and be submerged, and will back up and hold the waters on plaintiffs' said lands not only by such increased depth and of such additional acreage, but will hold the waters on plaintiffs' lands for a longer time than has heretofore occurred in ordinary major overflows, and same will cause permanent and irreparable injuries to plaintiffs' lands, and same will further cause the particular injuries to the respective particular plaintiffs stated below, and all such injuries and damage to plaintiffs and their lands will be special injury and damage to the particular lands of plaintiffs."

Former floods have done great damage to the property of the irrigation district, and the contemplated embankments will protect said property. Much of the conclusions of fact of the lower court is made up of opinions and predictions as to what may occur in the future, and the foundation of the action seems to be a claim that appellants must not build embankments that would protect its own property but leave the old embankments which would be carried away by floods and remove water that might injure appellees.

Some of the testimony was devoted to showing that the county had voted bonds to erect a levee along the river to protect the valley from high water, the object probably being to show that there was no necessity for appellants to increase the height and width of their embankments, but, if the proposed work by the county will protect appellants, it will also protect appellees.

[1] The irrigation district was duly organized under the laws of Texas, and was clothed with authority to construct canals

and ditches and to divert water from streams and to sell the same for purposes of irrigation. It had constructed its ditches and canals, and had been using the same to divert water from the Rio Grande for years. There was no complaint about matters in the past, but the complaint seems to have been lodged against appellants making the canals it had already constructed strong enough to resist high flood waters. As long as the canal embankments were so weak as to form no resistance to the high flood waters, but were carried away by them, no objection was made, but when the base of the embankments were so broadened as to probably be able to withstand flood waters then the grievance arose. The desire for an injunction did not arise from the 2 or 3 feet added to the height of the banks along the canal but to the great width added to the walls which decreased the probability of their destruction by flood waters. Appellants had the authority under the law to protect their canals with walls or embankments, and having that right they were clothed with power to build such walls as would be strong and efficient enough to resist all probable floods. Appellees do not claim the right to destroy the original walls, but merely the right to prevent the embankments being made strong enough to withstand floods. Appellants are strictly within their statutory rights, and the allegations and proof fail to make out a case which will appeal to the exercise of the powers of a court of equity, through the issuance of a writ of injunction.

[2] There was no taking of the land of appellees or attempted taking under the power of eminent domain within the purview of the Constitution. It may be that the broadening and heightening of the embankments along the canal would damage or even destroy the usefulness of the lands of appellees under the terms of the Constitution of Texas, but that would not constitute a "taking" of the land, and compensation would not be required before it was damaged or destroyed, and, as said by this court in Rische v. Transportation Co., 27 Tex. Civ. App. 33, 66 S. W. 325:

"Keeping in view that the makers of the Constitution were using the word 'taken' in the sense of an actual physical appropriation, it is clear that when it provides that compensation shall be made or secured before the property is taken, it has no reference to a case where property is damaged or destroyed, and one who has merely damaged property without actually appropriating it cannot be restrained from the use causing the damage, because he had not made arrangements for compensation before the use was begun."

This view of the Constitution has never been questioned since it was delivered, but that construction has been approved in numerous cases. Lumber Co. v. Railway, 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870; Galveston Railway v. Houston Electric Co., 57 Tex. Civ. App. 174, 121 S. W. 290; Marshall v. Allen (Tex. Civ. App.) 115 S. W. 849; City of Port Arthur v. Fant (Tex. Civ. App.) 193 S. W. 335; Jones v. Dallas Rivy (Tex. Civ. App.) 224 S. W. 807; Dallas Hunting Club v. Dallas County Levee District (Tex. Civ. App.) 235 S. W. 607.

As stated in the cited case of Lumber Co. v. Railway Co.:

"While the Constitution provides that without consent of the owner, his property shall not be 'taken, damaged or destroyed' without compensation, it further says that, when it is taken, 'compensation shall be first made or secured by a deposit of money.' The distinction is thus made by the Constitution itself between taking and damaging, etc., which becomes important when the aid of equity is invoked to prevent action merely threatened. If such action will constitute a taking, the facts that it is without consent and that compensation has not been made render it unlawful, so that the property owner has the right to prevent it by injunction. If it will constitute only a damaging, the attempt is not necessarily unlawful merely because compensation is not made in advance, and, if equity will prevent it at all, it will do so only upon the showing of additional facts."

The facts fail to show that appellees have no adequate remedy in law through an action for damages. In the case of Osborne v. Railway, 147 U. S. 248, 13 S. Ct. 299, 37 L. Ed. 155, it was said by the court through Chief Justice Fuller:

"But, where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial and the remedy at law in fact inadequate before restraint will be laid upon the progress of a public work. And, if the case * * * discloses only a legal right to recover damages rather than to demand compensation, the court will decline to interfere."

The Dallas Court of Civil Appeals, in the case of Hunting Club v. Levee Improvement Dist., herein cited, involving similar allegations and facts to those in this case, held:

"The question here to be determined then is: Do the facts of the case reflect an actual taking of appellant's property or infliction of a damage upon it consequentially flowing from acts committed upon adjacent property? In other words, granting that the building of the levee as described to prevent the water from the river flowing upon the lands within the confines of the levee district will increase the depth of the water on appellant's land and cause it to flow with greater violence across it and stand for a longer period of time than

formerly upon it, do these facts constitute a taking of the property or merely a damaging of it within the meaning of the Constitution? In our opinion, a fair construction cannot render the acts complained about an actual taking of the property for the use of the levee district. We do not think the view that the diversion of overflow water from land in any case so that it will flow with an increased depth and violence over adjoining land and stand longer upon such adjoining land could ever be said to constitute a taking of the land. * * * "

A temporary injunction was sought in that case and the court held:

"In the situation presented we think it was equity to deny the temporary mandatory injunction, and, under the circumstances, whatever damage or injury may be suffered by appellant, if established, must be compensated by recovery in a suit at law."

If appellants had been guilty of taking the property of appellees by broadening the base and increasing the height of its levees, it was indeed a long distance appropriation, because the nearest tract of land is 1,000 feet from the levee, and others are at a distance of 1½ miles. If appellants were compelled to condemn and pay for all the lands in the valley of the Rio Grande that are reached by waters that flow by or near their property, no irrigation company could be maintained.

Vernon's Sayles' Ann. Civ. St. 1914, article 5107—24, provides that irrigation districts may "acquire the necessary right of way for all reservoirs, dams, wells, canals, laterals, sites for pumping plants and all other improvements contemplated by this act by gift, grant, purchase or condemnation." Under that statute appellants could not acquire by condemnation any lands except those necessary to the purposes named, and therefore there could not under the law be a condemnation of lands situated as are those of appellees, with reference to the canal of the irrigation company, not being adjacent to the canal or in a position where they could be used for the successful operation of the irrigation district. The right of eminent domain granted to irrigation districts extends to rights of way to lands necessary for reservoirs and other improvements which may be necessary and proper and for those purposes alone. Article 5107—78. There could be no taking of the property of appellees, and consequently no injunction would lie under the allegations and facts of this case. Settegast v. Railway, 38 Tex. Civ. App. 623, 87 S. W. 200; Burton Lumber Co. v. City of Houston, 45 Tex. Civ. App. 363, 101 S. W. 825.

The judgment of the lower court is reversed, the temporary injunction denied, and the cause remanded for what other purposes the pleadings may permit.