**DUVALL v. CITY OF DALLAS et al.**
**No. 10755.**

Court of Civil Appeals of Texas. Dallas. April 19, 1930.
Rehearing Denied May 17, 1930.

W. J. Rutledge, Jr., of Dallas, for appellant.

Touchstone, Wight, Gormley & Price, J. J. Collins, City Atty., and A. A. Long, W. Hughes Knight, and H. P. Kucera, Asst. City Attys., all of Dallas, for appellees.

## LOONEY, J.

J. R. Duvall, appellant, owns lots Nos. 9 and 10 in block 279½, Good's addition to the city of Dallas, having a frontage of 100 feet on Swiss avenue and extending 110 feet in a southerly direction through the block to Miranda street. He brought this suit against the city of Dallas and the Texas & Pacific Railway Company, to enjoin the threatened obstruction of Miranda street at or near its intersection with Good street, and appeals from an adverse judgment.

The material facts involved here are these: the City in order to obviate and eliminate a dangerous grade crossing, where Good street crosses over the tracks of the railway company, decided to build an underpass, and to this end condemned a strip of land 50 feet wide, off the east side of blocks Nos. 279 and 279½ of Good's addition immediately adjoining and parallel with Good street, also adopted an ordinance abandoning, at grade, Good street where it crosses the railroad. Miranda street and the portion of Good street involved in this inquiry are parts of Good's addition dedicated to the public as streets, and appellant acquired his lots with refer-
ence to the map and dedication, hence, as an appurtenant, owns an easement in these streets, but that part of Good street over the railroad tracks, abandoned at grade by the city, was never a part of Good's addition; title to same is in the railroad company, subject to a prescriptive easement for street purposes. Miranda is a one-block street; its east end terminates at its intersection with Good street, and the west end terminates at its intersection with Hawkins street.

Excavation for the underpass will begin at a point near the intersection of Good street and Swiss avenue on the 50-foot strip condemned by the city for that purpose, and will gradually slope to a sufficient depth, where it passes under the railroad tracks, to admit of vehicular traffic. The excavation across Miranda, at its intersection with Good street, will reach such a depth as to destroy the intersection and necessitate the construction of a retaining wall, thus effectually blocking Miranda street at this point, and destroying access for vehicular traffic to and from the rear of appellant's property over Miranda by way of Good street. The point where Miranda street will be cut and blocked by the excavation is 60 feet east of appellant's lots; hence the same will be neither physically taken nor invaded in consummating the work, although appellant will suffer an incidental injury by being deprived of the means of ingress and egress for vehicular traffic, as above mentioned, but access to his property over the west end of Miranda from its connection with Hawkins street will remain as before, unimpaired.

Appellant challenges the correctness of the judgment of the court below in two assignments of error urged as propositions, which, when combined and reduced, are to the effect that, as he had not been compensated by the city for the partial destruction of his easement in these streets, he was entitled to enjoin the threatened blocking of Miranda street until compensated for said injury.

The city of Dallas has plenary power over its streets, alleys, etc. In subdivisions 4 and 6, § 7, art. 2 of the Charter we find the following: "The City of Dallas shall have power: * * * (4) to lay out, establish, open, alter, widen, lower, raise, extend, grade, narrow, care for, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places and bridges, and to vacate and close the same. * * * (6) To regulate, establish and change the grade of all sidewalks, streets and premises, and to require and compel the filling up and raising of same."

If before beginning a public enterprise, such as the construction of the underpass in question, the city should be compelled to ascertain, by condemnation proceedings or oth-

erwise, and settle with each abutting property owner for incidental injuries to easements in streets, the exercise of those charter powers would necessarily be attended with great delay and many difficulties. We do not think, however, the city was required to pursue that course in the absence, as in the instant case, of a contemplated physical invasion or appropriation of the property. The city has full authority to block Miranda street and abandon its connection with Good street, and can do so, as planned, without paying appellant damages for incidental injuries as a condition precedent to the progress of the work. His injuries, whatever the evidence may show them to be, may be fully repaired in damages, for the recovery of which the law affords an adequate remedy.

The pertinent provision of the Constitution is found in section 17, art. 1, as follows: "No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money. * * *"

■■■ Construing this provision of the Constitution, our courts have consistently held that a taking of property, within its meaning, is an actual physical invasion or an appropriation, and not simply the infliction of an incidental injury, such as where an easement is partially or wholly destroyed. In the former case injunction will issue to restrain a threatened taking where compensation has not been made in advance, but in the latter case injunction will not issue to restrain the progress of work, as the threatened injury may be repaired by damages for the recovery of which an adequate remedy at law is afforded. See Gray v. Dallas Terminal etc., Co., 13 Tex. Civ. App. 158, 36 S. W. 352, 355; Rische v. Texas Transp. Co., 27 Tex. Civ. App. 33, 66 S. W. 324; Settegast v. Houston, etc., Co., 38 Tex. Civ. App. 623, 87 S. W. 197; McCammon v. Trinity, etc., Co., 104 Tex. 8, 133 S. W. 247, 251, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870; City Commissioners v. Fant (Tex. Civ. App.) 193 S. W. 334; Burton v. City of Houston, 45 Tex. Civ. App. 363, 101 S. W. 822; Donna v. Piper (Tex. Civ. App.) 269 S. W. 157; Johnson v. Lancaster, (Tex. Civ. App.) 266 S. W. 565, 569.

In McCammon v. Trinity, supra, Judge Williams used the following pertinent language: "For the projectors of a public work to ascertain and, if necessary, condemn and pay for in advance land actually to, be invaded in the enterprise, is a simple and easy task when compared with the difficulty and uncertainty that would attend any course intended to determine in advance all the consequential damage to result to owners of property not actually touched, and this was prob-

ably the very practical reason for the distinction in the Constitution."

In Johnson v. Lancaster, supra, a similar case, Judge McClendon for the Austin Court of Civil Appeals said: "Conceding that plaintiff had the right to use the highway, its abandonment and closing by the city did not constitute a taking of appellant's property within the meaning of the Constitution requiring payment in advance. Lumber Co. v. Railway, 104 Tex. 9, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870. Whatever rights appellant had in the street were clearly only such rights as would entitle him to damages for being deprived of them, and condemnation proceedings to close the street were unnecessary."

Appellant relies upon the following cases to support the contention that he was entitled to the injunctive relief sought, to wit: Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288, 290; Stevens v. City of Dublin (Tex. Civ. App.) 169 S. W. 188, 190; Bowers v. Machir et al. (Tex. Civ. App.) 191 S. W. 758; Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, 505; Bowers v. City of Taylor (Tex. Com. App.) 16 S.W.(2d) 520.

We do not find any of these cases in point. The question decided in Kalteyer v. Sullivan, supra, was as to the power of the city of San Antonio to authorize an individual, for personal ends, to close a public alley. An abutting lot owner brought suit to enjoin its being closed. Disposing of the case, the court said: "The public, and the individuals composing it, have a right to look to the council for protection against such an appropriation of property dedicated to their use, and not to expect their trustees to become aiders and abetters of an individual in excluding them from and depriving them of the use of their highways."

Stevens v. City of Dublin involved the validity of an ordinance passed by the city authorizing school authorities to close a street between two blocks owned and used for school purposes. Suit was brought to prevent the closing of the street by one who owned an easement. The statement of the case shows that the action of the city in closing the street was not in the interest of the public at large, but exclusively for the benefit of the Dublin independent school district. The Court of Civil Appeals, however, based its decision on the ground that the city was without legal authority to close the street, as attempted, and in disposing of the case used this language: "For Revised Statutes, article 854, as it existed at the date of the ordinance expressly conferred the power to vacate an alley upon the written application of the abutting owners, but neither there nor elsewhere is any such express power given to vacate a public street, or part thereof. There

existed only such control over the streets as was necessary to prevent encroachments thereon, to alter, widen, or otherwise improve the same, and doubtless, in the interest of public safety, to temporarily close them. But these general powers were not, we think, properly susceptible of such extension as to authorize a permanent closing of a public street to the damage of an abutting owner. The city had such power, and such power only, as was conferred upon it, or such power as existed by necessary implication from powers given."

In Bowers v. Machir (Tex. Civ. App.) 191 S. W. 758, 762, an abutting property owner brought suit against other lot owners to require the removal of obstructions from a twenty-foot alley and to restrain further obstructions. The city of Fort Worth by ordinance abandoned the alley and authorized defendants to close same. The action of the city in abandoning the alley was not in the interest of the public, but exclusively for the benefit of two abutting lot owners. Sustaining the right of plaintiff for injunctive relief, the court said: "No doubt is entertained by us that if the alley was a menace to public health or safety of the citizens, the city would have a right to close it, or give permission to have it closed, notwithstanding any special property right of plaintiffs to have the same kept open, thus leaving to plaintiffs as their only remedy for relief a suit for damages for the injuries so sustained. But in the absence of a showing for such necessity, the city would have no right so to do, and an injunction would lie in favor of a property owner having a special property interest in keeping the street open to restrain it from so doing."

In Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, 504, the city abandoned a portion of a street in which both the Dallas Cotton Mills and the Industrial Company had an easement by reason of holding title under a common grantor who had dedicated the street to the public and sold off lots by direct reference to a dedicatory map. The Cotton Mills sued the Industrial Company to enjoin a physical closing of the street, which was sustained. The court (Commission of Appeals) in disposing of the case said: "The right which the city acquired was that of a public easement; the right which the individual purchaser acquired was a private easement. The two could exist in contemporaneous and harmonious operation, or the one could be destroyed without necessary impairment of the other. The public easement is the thing over which the city has jurisdiction in virtue of its charter power to 'lay out * * * alter, * * * maintain, * * * vacate, and close,' etc., streets. Proper exertion of that authority would enable it to relinquish the public ease-

ment, but the private right would be left intact. Bowers v. Machir, supra. Consequently, if the city did nothing beyond abandonment of the land as a public street, its acts could not afford warrant for the Industrial Company's claim to exclusive use and possession of the land upon which the street is located. * * * The Industrial Company therefore did not, either by purchase or through action of the city, acquire right to exclude Dallas Cotton Mills from use of Lamar street as a passage way or to obstruct such use, and injunctive relief against it was proper."

In the other case cited, Bowers v. City of Taylor, 16 S.W.(2d) 520, the Commission of Appeals recognized the right of the city of Taylor, acting for the public, to close the street involved, but held that it was without power to do so under a contract giving a railroad company exclusive use of same for fifteen years. The court held that the action of the city was not in the interest of the public, and further was a surrender of its governmental or legislative functions; hence the closing of the street for the purpose and under the circumstances should be enjoined.

We therefore overrule appellant's assignments and propositions and affirm the judgment of the court below.

Affirmed.