# JANUARY, 1911.

---

McCAMMON & LANG LUMBER COMPANY ET AL. v. TRINITY & BRAZOS VALLEY RAILWAY COMPANY.

No. 2207. Decided January 4, 1911.

**1.—Railway in Street—Ownership of Fee—Taking or Damaging—Injunction.**

The appropriation of a street for a railway thereon by authority of law and permission of the city, is a taking of the property of an abutting lot owner who also owns the street in fee subject to the public easement, as distinguished from mere damaging thereof, and may be restrained by injunction unless compensation is paid or secured in advance of such taking as required by the Constitution (Art. 1, Sec. 17). (Pp. 10-16.)

**2.—Same—Taking and Property Defined.**

The fee simple title to land is "property," whether burdened with an easement or not; and "taking" includes the appropriation of it or of some interest or estate in it by actual physical possession, such as exists when a railroad is constructed and operated upon it. (Pp. 11-13.)

**3.—Same—Cases Discussed.**

Houston & Texas C. Ry. Co. v. Odum, 53 Texas, 343; Gulf, C. & S. F. Ry. Co. v. Eddins, 60 Texas, 656; Rische v. Texas Transp. Co., 27 Texas Civ. App., 33; Settegast v. Houston, O. L. & M. P. Ry. Co., 38 Texas Civ. App., 623; Gray v. Dallas Terminal Co., 13 Texas Civ. App., 163; Burton Lumb. Co. v. City of Houston, 45 Texas Civ. App., 363; discussed and distinguished. (Pp. 14, 15.)

**4.—Same—Access to Lots.**

The interference with a lot owner's access to his property from the street or with his light and air by the construction of a railway in it, is not a taking of his property where he had no title to the street nor interest therein other than

the easement of the public, except the special right as owner of an abutting lot. Interference with this is only a damaging of his property for which compensation is not required to be made in advance.   (Pp. 15, 16.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Navarro County.

The lumber company and others sued the railway company for injunction.   Demurrer was sustained and the suit dismissed.   This judgment was affirmed on appeal by plaintiffs, and thereupon they obtained writ of error.

*Richard Mays,* for plaintiffs in error.—Plaintiffs in error own the fee to the alley and street, and the building of the railway spur-track thereon is an additional servitude, not contemplated by the original dedication, and would result in a taking of their property.   Lewis Em. Dom., secs. 113, 111; 1 Am. & Eng. Ency. of Law and Prac. (3d ed.), 217, 218, 220; Railway Co., v. Southern Inv. Co. (Fla.) 13 Am. & Eng. Anno. Cases, 18; Elliott, Roads & Streets, (2d ed.), secs. 708, 700, 690, 697; 27 Am. & Eng. Ency. of Law, (2d ed.), 138; 2 Dillon, Mun. Corp. (4th ed.) sec. 725; 15 Cyc. 652, 672; Goodtitle v. Alker, 1 Burr., 143; Theobold v. Railway Co., 66 Miss., 279; 1 Hare Const. Law, 362; Abbott Mun. Corp., sec. 841; Railway Co. v. Fuller, 63 Texas, 467; Railway Co. v. Odum, 53 Texas, 352; City of Corsicana v. Zorn, 97 Texas, 322.

Plaintiffs in error, in addition to owning the fee to the alley and street, also own the abutting property thereon, upon which their business houses are situated and in which they have been engaged for many years, and in the operation of which business they have acquired and hold easements and rights in said alley and street; and in addition thereto they have the interest, common to the public, to have the alley and street kept open for public use.   The threatened use by defendant in error, would result in a complete appropriation of the street and alley, and a total destruction thereof for all the public uses; the exclusion of the public therefrom; the exclusion of plaintiffs in error therefrom, and a denial of all right upon their part to use the same, as abutting owners therein, in carrying on their lawful occupations; and would result in a taking of their property, to prevent which they ought to be entitled to injunctive relief.   Brewing Co. v. Railway Co. (Tenn.) 85 S. W., 864; Corby v. Railway Co. 52 S. W. (Mo.), 282; Railway Co. v. Middleton, 139 Ala., 610; Railway Co. v. Odum, 53 Texas, 352; Railway Co. v. Bergsland, 12 Texas Civ. App., 97 (Writ of error refused); Kalteyer v. Sullivan, 18 Texas Civ. App., 493 (Writ of error refused); Lockwood v. Railway Co., 1 Am. & Eng. Ry. Cases (N. S.), 16; Rev. Stat., art. 4426; Evans v. Railway Co. 39 Am. St. Rep., 908; Gustafson v. Hamm, 22 L. R. A., 565; 33 Cyc., 207, 208; 27 Am. & Eng. Ency. of Law (2d ed.), 138, 162, 171, 183; 1 Am. & Eng. Ency. of Law (2d ed.), 225; 15 Cyc., 607, 647, 662; 28 Cyc., 857, 863, 865; Elliott on Roads and Streets, 700.

*Andrews, Ball & Streetman* and *McClellan & Prince,* for appellee.— Though the fee is in plaintiff to the streets, avenues and alley,

shown in plaintiff's petition, nevertheless, appellee can exercise the franchise granted it by the city of Corsicana, to lay its track thereon without first compensating the owners, because the exercise of such franchise is not a "taking" of property as contemplated by our State Constitution. Gulf, C. & S. F. Ry. Co. v. Eddins, 60 Texas, 657; Street Ry. Co. v. Limburger, 81 Texas, 81; Settegast v. Railway Co., 38 Texas Civ. App., 623; Rische v. Transportation Co., 27 Texas Civ. App., 33; Grossman v. Railway Co., 92 S. W., 837; Laager v. San Antonio, 67 S. W., 61; Mangan v. Transportation Co., 44 S. W., 998; San Antonio v. Stremberg, 75 Texas, 369; Denison, etc., Ry. Co. v. St. Louis & S. W. Ry., 2 S. W., 202; Houston & T. C. Ry. Co., v. Odum, 53 Texas, 352; Indianola v. Railway Co., 66 Texas, 595; Ft. Worth, etc., Co. v. Rosedale Ry. Co., 68 Texas, 170; Galveston, etc., Ry. Co., v. Galveston, 90 Texas, 399; Missouri, K. & T. Ry. Co. v. Connelly, 14 Texas Civ. App., 531; Galveston, H. & S. A. Ry. Co. v. DeGroff, 118 S. W., 135; Burton Lumber Co. v. City, 101 S. W., 822; Railway Co. v. Fuller, 63 Texas, 470; Gray v. Dallas Ter. Co., 13 Texas Civ. App., 159; Osborn v. Railway Co., 147 U. S., 247; Chicago v. Taylor, 125 U. S., 164; Gans v. Railway Co., 18 L. R. A., 339; Aycock v. San Antonio Brewing Co., 63 S. W., 953.

A common carrier can not resort to condemnation proceeding to acquire a right to use a street, avenue or alley, but must enter upon them through the permission of the city that exercises exclusive control over said highways. Special Laws, Texas, 28th Leg., ch. 28, page 171 et seq.; Local & Special Laws, 31st Leg., ch. 22, p. 191, et seq.; Rische v. Transportation Co., 27 Texas Civ. App., 38; Settegast v. Railway Co., 87 S. W., 197; Rev. Stat., art. 4438. As to judicial notice of said acts of incorporation: Cotton Press Co. v. Bradley, 52 Texas, 597; Dwyer v. Brenham, 65 Texas, 527; Cleburne v. Brown, 73 Texas, 446.

The Constitution of Texas makes railroads public highways and common carriers, and provides they may construct lines and operate between any points in the State. A railway system is therefore dedicated to public use. The use of the streets, avenues, and alley sought by appellee being in furtherance of the objects of its creation, under the Constitution would constitute a public use because a part of a common carrier and a public highway. Constitution of Texas, art. 10, secs. 1 and 2; Mangan v. Texas Trans. Co., 18 Texas Civ. App., 478; Brown v. Chicago, etc., Ry., 38 S. W., 1099.

Highways include alleys, and the city of Corsicana has exclusive control over same and has the same legal right to grant franchises to use alleys as it has to use streets. Rev. Stat., art. 4438; section 113, Corsicana Charter, Spec. Laws 31st Leg., page 198; Elliott on Roads and Streets, sec. 1; Kalteyer v. Sullivan, 18 Texas Civ. App., 493.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This is an action by plaintiffs in error for an injunction to restrain the defendant in error from constructing its track, which is to be that of a commercial railway for the carriage of passengers and freight, along a public street and alley in the city of Corsicana. A general demurrer to the petition was sustained and the cause was

dismissed by the District Court, whose action was affirmed by the Court of Civil Appeals.

The facts alleged on which the questions of law depend may be stated very briefly. Plaintiffs, as lot owners, are the owners in fee of the land over which the street and alley run and have, abutting thereon, business houses in which they carry on their several businesses for access to and egress from which the street and alley are essential. The allegations are full to the effect that the intended construction would be to appropriate the street and alley to the exclusive use of the defendant for a railroad. The defendant has acquired no other right to occupy the street and alley with its track than legally results from its charter as a railroad company, and the assent thereto of the proper authorities of the city, properly given.

The contention of counsel for the plaintiffs is that the proposed use of the street and alley would be a taking of their property without compensation first paid as required by the Constitution. This is denied by counsel for defendant, who insist that such use of property already dedicated to such purposes would not be a taking of it and would, at most, be only a damaging of plaintiffs' abutting lots for which compensation in advance is not required.

The decision, therefore, necessarily depends on the question whether or not the petition shows a threatened *taking*. While the Constitution provides that without consent of the owner, his property shall not be "taken, damaged or destroyed" without compensation, it further says that, when it is *taken*, "compensation shall be *first* made or secured by a deposit of money." The distinction is thus made by the Constitution itself between taking and damaging, etc., which becomes important when the aid of equity is invoked to prevent action merely threatened. If such action will constitute a taking, the facts that it is without consent and that compensation has not been made render it unlawful, so that the property owner has the right to prevent it by injunction. If it will constitute only a damaging, the attempt is not necessarily unlawful merely because compensation is not made in advance, and if equity will prevent it at all it will do so only upon the showing of additional facts. It is unnecessary to discriminate between the street and the alley as the decision will apply to both.

It should require only a proper regard for plain physical facts to bring the mind to the conclusion that the location of a railroad, like that of defendant, upon land in which the public have only the easement of a highway and another has the fee, is a taking of that part of the land occupied by the track, at the very least, and hence a taking of property of the owner of the fee.

No one disputes that this is the legal effect of such an appropriation of land not burdened with such an easement, for by the construction and use of the railroad the land is actually occupied and, necessarily, to a greater or less extent, the owner is excluded from that complete and exclusive use and control to which his ownership entitles him. Is it otherwise, except in degree, when, instead of only one, there are two interests in the soil to be considered, the public easement and the fee? Is not the land appropriated and used in that case in the same way and for the same purposes as in the other? In both instances

the railroad company actually occupies and uses the soil itself in the assertion of a right of way in and over it. Is there a *taking* in one instance and not in the other? To make so fundamental a distinction is to deny to the visible facts their necessary consequence. Where, before such occupation of the street, the public, including the owner of the fee, had the use of the highway equally and in common, unimpaired by any appropriation of any part of it to an exclusive use, after such occupation the part actually occupied is to a large extent withdrawn from other uses than those of the railroad company. It is true that such a taking is not entirely from the owner of the fee. The easement of the public is also invaded and taken, at least, to the extent that the highway is actually occupied; but to that extent also the soil belonging to the owner of the fee is taken. The legally authorized consent of the public to such use of the easement makes it lawful, but does not make it any the less a taking, nor justify the taking of that which does not belong to the public—the fee. It is true also that the appropriation of part of the land in a street as a way for a railroad does not so completely exclude the public from its use, theoretically at least, as does such an appropriation of land unaffected by any such public use; for the public may still enjoy the street, as best they can, consistently with the presence of the road. As *one of the public,* the owner of the fee may participate in such enjoyment of the easement, but his use of the property in his *private right* is as fully excluded and the land is as completely appropriated to the use of the road as if there were no easement. The fee in the land is not as valuable to him as if it were not burdened with the street, but nevertheless it is property which can not be taken without compensation first made or secured. If the easement of the street should come to an end, the fee would remain burdened only by the easement of the railroad right of way, and this lays bare the fact that the private property in the street is diminished to the extent of such right of way. In such situations the entire estate is divided into two interests, the easement of the public and the fee of the private owner, and the construction and use of a railroad over it is as much a taking of the corporeal property as if there were but one interest.

The propositions on which counsel for defendant based the argument that only a damaging and not a taking is threatened would not, if they were sound, tend to establish that conclusion, but rather the one that the taking would be rightful without compensation. Stated shortly, those propositions are that the original dedication of the land was for all the purposes of highways and that the use of it for a railway is one of such purposes. The conclusion sought to be drawn is, not that such use without compensation is authorized, as one to which the owner has consented, but that it is not a taking as distinguished from a damaging. The conclusion has no connection with the premises. If it were true that the dedication authorizes the use of the street for the purposes of commercial railroads, it would follow that such a use would be with the consent of the dedicator and therefore to be made without compensation, but not that it would not be a taking. That such is not the effect of a dedication in this State is put beyond question by decisions of this court, which hold that

the construction of tracks of steam commercial railroads in streets constitutes a new servitude or burden not within the purposes of the dedication and calling for compensation. Gulf, C. & S. F. Ry. Co. v. Eddins, 60 Texas, 656; Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467.

Whether the compensation is *first* to be made must, of course, depend upon the answer to the question whether or not there is to be a taking. Whatever may be the full meaning of the words, "property," and, "taken," in the Constitution, there is no escape from the conclusion that the first includes the fee simple title to the thing owned whether it be burdened with an easement or not, and that the latter includes the appropriation of that thing, or of some interest or estate in it, by actual, physical possession, such as exists when a railroad is constructed and operated upon it. Gulf, C. & S. F. Ry. Co. v. Lyons, 2 App. Civ. Cas. (Willson), sec. 139 and authorities cited.

It is urged that the decisions in this State have settled the law to be otherwise, but we think not. There have been conflicting views of the subject in other jurisdictions, arising mainly in determining the sense in which the word, "property," is used in the Constitution, one view being that it referred to the tangible objects owned as property, and the other that it was used in its correct legal sense to indicate the several rights of ownership recognized by law with respect to such objects. Differences as to what was essential to a *taking* necessarily resulted from this fundamental difference as to what was to be regarded as the property. This is fully explained in Lewis on Eminent Domain, Chapter III, and the many decisions there referred to. It is alluded to also in Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 469. That which was regarded by a court entertaining the latter view as the taking away of a right of property in the thing which was the subject of ownership, as land or a chattel, for which compensation was exacted by the Constitution, was held by those entertaining the former not to be a taking of the thing or of any part of it and therefore not to entitle to compensation under a provision exacting it only for takings, however damaging to the owner the act complained of may have been. This history of the subject should be kept in mind when construing our present Constitution.

Several kinds of cases have arisen out of the occupation of streets by railroads; (1) when the person seeking compensation owned the fee, as in this case; (2) where he did not own the fee, but owned lots abutting on the street with the rights of access and egress, light and air; (3) where he owned neither the fee nor abutting lots, but owned other land so situated with reference to the railroad that he suffered damage peculiar to his situation and was held entitled to compensation under the doctrine of nuisances. (Gainesville, H. &. W. Ry. Co. v. Hall, 78 Texas, 169, 9 L. R. A., 298, 22 Am. St., 42.)

To our minds it seems plain that the first class of cases fall within both views of the meaning of the words, "property," and "taken," just noticed. There has been some difference of opinion in other jurisdictions over this proposition but the overwhelming weight of authority is in favor of the view first stated, and there has been no contrary holding by this court.

In view of this diversity of opinion as to the scope of the original provision in the Constitution, that in the present was so worded as to give compensation for all losses sustained by property owners for the benefit of the public in the construction of public works, whether there was a taking, or only a damaging or destruction of property. Nearly all the actions involving its application that have appeared in this court have been brought to recover compensation, in the form of damages, and the distinction between a taking and a damaging was generally unimportant, as the damages were recoverable whether there had been the one or the other. Dicta in cases merely seeking the recovery of damages could hardly be of controlling effect on the present question even if they went to the extent claimed for them; but we have not found in those cited even any dicta, besides one noticed below, which, properly understood, assert that that is not a taking which is sought to be prevented by the present plaintiff. The cases of that kind are so numerous that we shall not attempt to cite many of them, but shall confine our discussion to those which seem most closely to approach the true question and chiefly to be relied upon.

The case of Houston & Texas C. Ry. Co. v. Odum, 53 Texas, 343, greatly relied on by the appellee, was an action of the second class above referred to, to recover damages for the location of a railroad in a street, where the fee was not in the plaintiff but in the State. It was controlled by the Constitution of 1869, which gave compensation only for property taken. The court held that "the regulation or enlargement of the use of the street, *the property of the State,* by the Legislature, is not a taking of property within the meaning of the Constitution of 1869, although the lot owner may thereby suffer incidental or consequential inconvenience." It ought not to be necessary to say that this does not apply when the fee is in the person complaining, for then the State is not the owner of the entire estate in the soil and the Legislature has no power to take or authorize the taking of that part of it which belongs to another.

In Gulf, C. & S. F. Ry. Co. v. Eddins, supra, and in other cases following it too numerous to be cited, the change wrought by the present Constitution has been pointed out, and damages caused by railroads in streets have been allowed, whether resulting from takings or not; but none of the cases in this court have decided that there is not a taking of private property by the construction and use of railroads in streets where the fee is privately owned.

In Rische v. Texas Transportation Co., 27 Texas Civ. App., 33, such an opinion is expressed, but at the same time it is stated that the pleading did not properly show that the plaintiff owned the fee. The application for writ of error to this court presented an entirely different theory from any involved in this case.

In Settegast v. Houston, O. L. & M. P. Ry. Co., 38 Texas Civ. App., 623, the case was discussed as if it were of the second class above mentioned in which it was claimed that there had been a taking merely because of the appropriation of a street to railroad purposes and not because the plaintiff owned the fee in the land actually appropriated. If such a fact existed in that case, there is nothing in

the opinion to show that it was relied on or called to the attention of the Court of Civil Appeals.

In Gray v. Dallas Terminal Co., 13 Texas Civ. App., at page 163, it is expressly shown that the lots were not invaded; and this is true also of Burton Lumber Co. v. City of Houston, et al., 45 Texas Civ. App., 363, 101 S. W., 825-6, stating the decision in the Settegast case as we have explained it.

The facts alleged by the plaintiffs in this case, in addition to their claim based on their ownership of the fee, seem to be intended to present the contention that without regard to the fee their right to the use of the street for ingress and egress, light and air, which is an incident of their ownership of abutting lots, is a right of property appurtenant to those lots, and that, hence, the threatened interference with that right would constitute a taking of property in the constitutional sense. This contention is in accord with the authorities holding the second view before mentioned, and with the intimation in Judge Stayton's opinion in the Fuller case, supra. It is contrary, we think, to the Odum case and to the opinions of the Courts of Civil Appeals in the four cases above named. If the present Constitution, like former ones, gave protection only against takings, we should be very reluctant to agree to a construction that would deny compensation. But no construction we could adopt would deny compensation, the only question being whether or not it must be made in advance. The words, "damaged or destroyed," show the purpose to secure compensation for losses not within the language previously used, and evidently were intended to include effects upon private property of public enterprises which might be held not to constitute takings. The added words are inserted, not as a construction, but as an extension of the scope of the language previously used. It is therefore reasonably certain that the first view stated above, as to what constitutes the *taking* of property, was assumed in the framing of the new provision, and compensation was exacted for injuries which are not regarded as takings within that view. Since the making of compensation in advance is required for *takings* and not for other injuries, the several words must be held to make an important distinction and not to have been used out of abundant caution, only, in order to remove all doubt as to the right to compensation. Hence the word, "taken," ought not to be held to include all cases that are covered by the others, and we think the Courts of Civil Appeals have correctly held in the four cases last above mentioned that those kinds of injuries that result to those owning lots abutting on streets, but not owning the fee in the land in the streets, from railroads thereon, are not the taking but the damaging of property. It is only in reference to that kind of property that the argument has force that there is no provision for condemnation. There is provision for the condemnation of land to be actually occupied by the tracks of railroads and of every estate in it. For the projectors of a public work to ascertain and, if necessary, condemn and pay for in advance, land actually to be invaded in the enterprise is a simple and easy task when compared with the difficulty and uncertainty that would attend any course intended to determine in advance all the conse-

quential damage to result to owners of property not actually touched, and this was probably the very practical reason for the distinction in the Constitution. Where the title of the lot owner embraces soil in the street to be occupied by the railroad the statute regulating condemnations applies, and compensation can be made in one proceeding, not only for the value of the land actually occupied, but for the consequences to the remainder of the lot. But this is not true of land not to be occupied and used.

In the Odum case, supra, there is an intimation that the destruction of a street might be so complete as to constitute a taking of the property in abutting lots. Whether or not the exercise of the right of access and egress incident to ownership of abutting lots might be so completely prevented by uses made of streets as to constitute a taking of the lots in the sense of the present Constitution we need *not now decide,* since that which is here threatened is held to be a taking of those parts of the lots extending into the streets, so far as the railroad would actually occupy them, and that is enough to sustain the application for injunction.

For the same reason it is unnecessary that we discuss the other question whether or not an action for an injunction would lie under proper circumstances to prevent the damaging of property.

For the reasons stated, the District Court erred in dismissing the cause on demurrer and the Court of Civil Appeals erred in sustaining that action.

*Reversed and remanded.*