**PECOS & N. T. RY. CO. et al. v. FALLS et ux.**

**No. 4742.**

Court of Civil Appeals of Texas. Amarillo.

July 3, 1936.

Terry, Cavin & Mills, of Galveston, Madden, Adkins, Pipkin & Keffer, of Amarillo, and Wilson, Randal & Kilpatrick, of Lubbock, for appellants.

Anderson & Girand, of Lubbock, for appellees.

JACKSON, Justice.

In January, 1891, the owners of section 1, in block O, situated in Lubbock county, Tex., filed and had recorded in Volume 5, pages 384 and 385, of the Deed Records of said County, a dedication deed and plat of the original town of Lubbock, subdividing said section into blocks and lots, and dedicating certain streets and alleys to the use of the public.

On the plat a courthouse square was designated, the blocks and lots were indicated by numbers, and the streets running north and south were named, and the seven streets running east and west, north of the courthouse square, and the seven streets running east and west, south of the courthouse square, were also named on the plat.

Blocks 9, 25, and 41 were located within the above area, and abutted Singer street on the west and Chestnut street on the east. Block 9 was north of and separated from block 25 by North Seventh street. Block 41 was south of and separated from block 25 by North Sixth street. An alley, 20 feet wide, extending north and south through the center of these blocks, and parallel to Singer street on the west and Chestnut street on the east, was delineated. These blocks were each subdivided into twenty lots, and beginning on the northwest of each block the lots were numbered from 1 to 10, inclusive, and fronted on Singer street and abutted on said twenty-foot alley. Beginning at the northeast of each block the lots were numbered from 11 to 20, inclusive, and fronted on Chestnut street and abutted on said alley.

The appellees herein, J. L. Falls and wife, Mandy Falls, were the owners of lots 1 and 2, in block 25, under a consecutive chain of conveyances from the original owners who platted said section. In these conveyances appellees' lots were described as lots 1 and 2, in block 25, in the town of Lubbock, as the same appears from the map

of said town recorded in Volume 5, pages 384 and 385, of the Deed Records of Lubbock County.

All parties concede that the streets and alleys involved in this litigation were dedicated to the use of the public.

The corporate appellants, the Pecos & Northern Texas Railway Company, as the owner of the physical properties, and the Panhandle & Santa Fé Railway Company, the operating lessee, under the authority of the Interstate Commerce Commission and the Railroad Commission of Texas, applied to the city of Lubbock for an easement, or franchise, granting to them permission to construct, maintain, and operate an industrial railway track upon said alley, extending through blocks 9, 25, and 41, and across certain streets and along other alleys unnecessary to mention. The city of Lubbock, a municipality, incorporated under what is known as the Home Rule Bill, by an ordinance duly passed and finally approved on May 18, 1936, granted to appellants, and their successors, "the right, power and privilege of locating, building, erecting, constructing and maintaining an industrial track, with the necessary turnouts, switch stands, and other necessary appliances in connection therewith, upon and over the alley running North and South through Blocks 41, 25 and 9, in the original town of Lubbock; * * * provided, however, that said track shall be so erected and maintained as to permit the crossing thereof by ordinary vehicles where it intersects the streets herein described."

The appellants had agreed, at their expense, with the Texas Utilities Company, the Southwestern Bell Telephone Company, and the West Texas Gas Company, having their transmission lines located in said alley, and with the city of Lubbock, having a power line and a sewer line in said alley, to move such lines to a position on either side of the industrial track, but wholly within the alley, in order that the track could be constructed along the center of the alley, and that such lines and utilities were, at the time of the trial, being moved and located, and that appellants intended to proceed with the construction of such industrial track upon and along said alley.

The appellants were acting without the consent of appellees, and had not acquired the right of way along the alley adjacent to the lots involved by purchase or condemnation.

The appellees herein, on May 2, 1936, filed their application to obtain a temporary injunction, restraining appellants from constructing and maintaining such track along the part of the alley on which their lots abutted, and prayed that upon a final hearing said injunction be made permanent.

The appellants answered, and, after a hearing on the merits, the court, on May 18, 1936, granted the relief sought and enjoined the appellants permanently from the construction, maintenance, and operation of said track upon or across the part of the alley upon which the appellees' property abutted.

"It is apparently settled in this state that an owner of property that abuts on a street, alley, or public highway, owns the fee to the center of such street, alley, or public highway, unless otherwise declared in the grant. Roaring Springs Townsite Co. v. Paducah Telephone Co. (Tex.Civ.App.) 164 S.W. [50] 51, and authorities cited." Quanah, Acme & Pacific R. Co. v. Swearingen (Tex.Civ.App.) 4 S.W.(2d) 136, 140.

The appellants contend that appellees were not entitled to equitable relief because the record does not show a "taking" of appellees' property, and that appellees had an adequate remedy at law by a suit to recover such damages as they could show they sustained by the construction and operation of the industrial track along the alley adjacent to their property.

"The contention of counsel for the plaintiffs is that the proposed use of the street and alley would be a taking of their property without compensation first paid as required by the Constitution. This is denied by counsel for defendant, who insist that such use of property already dedicated to such purposes would not be a taking of it and would, at most, be only a damaging of plaintiffs' abutting lots for which compensation in advance is not required. The decision, therefore, necessarily depends on the question whether or not the petition shows a threatened 'taking.' While the Constitution provides that, without consent of the owner, his property shall not be 'taken, damaged or destroyed' without compensation, it further says that, when it is taken, 'compensation shall be first made or secured by a deposit of money.' The distinction is thus made by the Constitution itself between taking and damaging, etc., which becomes important when the aid of equity is invoked to prevent action

merely threatened. If such action will constitute a taking, the facts that it is without consent and that compensation has not been made render it unlawful, so that the property owner has the right to prevent it by injunction. If it will constitute only a damaging, the attempt is not necessarily unlawful merely because compensation is not made in advance; and, if equity will prevent it at all, it will do so only upon the showing of additional facts. It is unnecessary to discriminate between the street and the alley as the decision will apply to both.

"It should require only a proper regard for plain physical facts to bring the mind to the conclusion that the location of a railroad, like that of defendant, upon land in which the public have only the easement of a highway and another has the fee, is a taking of that part of the land occupied by the track, at the very least, and hence a taking of property of the owner of the fee. No one disputes that this is the legal effect of such an appropriation of land not burdened with such an easement, for by the construction and use of the railroad the land is actually occupied and, necessarily, to a greater or less extent, the owner is excluded from that complete and exclusive use and control to which his ownership entitles him. Is it otherwise, except in degree, when, instead of only one, there are two interests in the soil to be considered, the public easement and the fee? Is not the land appropriated and used in that case in the same way and for the same purposes as in the other? In both instances the railroad company actually occupies and uses the soil itself in the assertion of a right of way in and over it. Is there a taking in one instance and not in the other? To make so fundamental a distinction is to deny to the visible facts their necessary consequence. Where, before such occupation of the street, the public, including the owner of the fee, had the use of the highway equally and in common, unimpaired by any appropriation of any part of it to an exclusive use, after such occupation the part actually occupied is to a large extent withdrawn from other uses than those of the railroad company. It is true that such a taking is not entirely from the owner of the fee. The easement of the public is also invaded and taken, at least, to the extent that the highway is actually occupied; but to that extent also the soil belonging to the owner of the fee is taken. The legally authorized consent of the public to such use of the easement makes it lawful, but does not make it any the less a taking, nor justify the taking of that which does not belong to the public—the fee." McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247, 248, 36 L.R.A.(N.S.) 662, Ann.Cas.1913E, 870.

"The occupation of a street by a commercial steam railway by placing its tracks thereon and operating its trains thereover is not such use of the street as was contemplated in its dedication to the public, and is a taking of the fee of abutting property owners in the street, and  *  *  * such owner is entitled to an injunction to prevent such taking unless compensation is made therefor. Gulf, C. & S. F. Railway Co. v. Fuller, 63 Tex. [467] 469; McCammon & Lang Lumber Co. v. Railway Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A.(N.S.) 662, Ann.Cas.1913E, 870." Galveston-Houston Electric Ry. Co. v. Jewish Literary Society (Tex.Civ.App.) 192 S.W. 324, 330.

Under this record these authorities apparently settle, adversely to them, all of appellants' contentions.

The judgment is affirmed.