# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 19-0605

═══════════════

JIM OLIVE PHOTOGRAPHY, D/B/A PHOTOLIVE, INC., PETITIONER,

v.

UNIVERSITY OF HOUSTON SYSTEM, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

═══════════════════════════════

JUSTICE BUSBY, joined by JUSTICE LEHRMANN, and joined by JUSTICE BLACKLOCK as to Part II, concurring.

I agree with the Court's conclusion that Jim Olive Photography has not alleged a per se taking of its copyright under either the United States or Texas Constitution. But it is important to acknowledge the expansive nature of the property our Constitutions protect and the need to adapt takings doctrines developed for tangible property so that we have clear rules for applying this constitutional protection to intangible property. In addition, the Texas Constitution requires compensation for more types of government action than its federal counterpart: it also protects citizens whose property has been "damaged" by the government or "applied to public use." TEX. CONST. art. I, § 17(a). Olive has not alleged a violation of these prongs of section 17(a), however, and existing federal and state court precedent does not support its claim under the doctrine of takings per se. I therefore join the Court's opinion.

**I**

The Takings Clause of the United States Constitution[1] provides protection for a wide variety of private property, both real and personal, "without any distinction between different types." *Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015); *see id.* at 361–62 (extending the physical appropriation analysis of *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426–35 (1982), to personal property). Intellectual property is considered intangible personal property,[2] and some of its basic characteristics—such as alienability and excludability—indicate that it falls within the scope of the Takings Clause. *See* 17 U.S.C. § 201(d)(1) (providing for the transfer of copyright ownership by "any means of conveyance or by operation of law"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002–03 (1984) (observing that trade secret is assignable and that treatment of owner's proprietary interest as property is "consonant with a notion of 'property' that extends beyond land and tangible goods and includes the products of an individual's 'labour and invention'" (quoting 2 WILLIAM BLACKSTONE, COMMENTARIES *405)).

Though few cases have expressly addressed the application of the Takings Clause to copyrights, the United States Supreme Court has observed that "[c]opyrights are a form of property." *Allen v. Cooper*, 140 S. Ct. 994, 1004 (2020).[3] And it has held that other types of

---

[1] The Takings Clause of the Fifth Amendment to the United States Constitution is "made applicable to the states through the Fourteenth Amendment." *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004) (citing *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 306 n.1 (2002)).

[2] *See Stewart v. Abend*, 495 U.S. 207, 219 (1990); *Chavez v. Arte Publico Press*, 157 F.3d 282, 288 (5th Cir. 1998), *vacated*, 180 F.3d 674 (5th Cir. 1999).

[3] The Court went on to hold in *Allen* that Congress had not validly abrogated states' Eleventh Amendment immunity from suit in federal court for copyright infringement. 140 S. Ct. at 1007. But *Allen* says nothing about whether a state government entity can be sued in either state or federal court for taking rights in a copyrighted work.

intellectual property are protected by the Takings Clause. In *Ruckelshaus*, for example, the Supreme Court concluded that trade secrets fall within the scope of the Takings Clause. 467 U.S. at 1003–04. The Court has also recognized that the government cannot appropriate patents without providing compensation. *See Horne*, 576 U.S. at 359–60.[4]

The test for determining whether protected intellectual property has been taken is less clear. Early federal cases focused on physical takings of land by direct appropriation or ouster. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992) (collecting cases). And the categories of regulations that amount to takings per se were developed with tangible property—and, more specifically, real property—in mind.[5] As a result, these per se rules do not translate readily to intangible property. For example, if the government appropriates intellectual property, the *Loretto*

---

[4] *See also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018) ("[O]ur decision should not be misconstrued as suggesting that patents are not property for purposes of the Due Process Clause or the Takings Clause."); *Fla. Prepaid Postsecondary Ed. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 642 (1999) ("[Patents] are surely included within the 'property' of which no person may be deprived by a State without due process of law."); *Wm. Cramp & Sons Ship & Engine Bldg. Co. v. Int'l Curtis Marine Turbine Co.*, 246 U.S. 28, 39–40 (1918); *Hollister v. Benedict & Burnham Mfg. Co.*, 113 U.S. 59, 67 (1885); *James v. Campbell*, 104 U.S. 356, 357–58 (1881) ("That [the grant of a patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser, we have no doubt."); *McKeever v. U.S.*, 14 Ct. Cl. 396, 422 (1878), *aff'd without op.*, 18 Ct. Cl. 757 (1883). While some have read *Schillinger v. United States* to suggest otherwise, that case addressed the scope of the Tucker Act's grant of jurisdiction to the U.S. Court of Claims, not the ability of a patent owner to bring a takings claim generally. 155 U.S. 163, 169–72 (1894) (holding that Tucker Act did not waive sovereign immunity for suits against the government sounding in tort); *see* Adam Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents under the Takings Clause*, 87 B.U. L. REV. 689, 711–14 (2007).

[5] *See Lucas*, 505 U.S. at 1027–28 (explaining that personal property receives less protection under the per se rule for deprivation of all economically beneficial use because an owner of personal property "ought to be aware of the possibility that new regulation might even render his property economically worthless" (citing *Andrus v. Allard*, 444 U.S. 51, 66–67 (1979)).

physical-invasion analysis is not especially helpful.[6]  And the "functional basis" for allowing the government to impose generally applicable regulations affecting property values without categorically requiring compensation does not apply where the government has effectively "singled out" intellectual property for appropriation.[7]

Rather than applying these categorical rules, the Court in *Ruckelshaus* employed a modified version of the multi-factor *Penn Central* regulatory takings analysis to determine whether a trade secret had been taken.  *Ruckelshaus*, 467 U.S. at 1005 (citing *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)).  Ultimately, "interference with reasonable investment-backed expectations" proved the decisive factor.  *Id.* at 1005, 1011 & n.15.  But as the Court observes, Olive has expressly disavowed a regulatory takings claim.

Accordingly, I agree with the Court's disposition of this case.  As federal takings jurisprudence currently stands, Olive has not alleged a per se takings claim.  Nor does Olive argue for a different result under the Takings Clause of the Texas Constitution.  But that is not to say that the United States and Texas Constitutions provide identical protection against government actions affecting private property.  As explained below, both the text of the Constitutions and our decisions applying them indicate otherwise.

---

[6] 458 U.S. at 435–38; Note, *Copyright Reform and the Takings Clause*, 128 HARV. L. REV. 973, 985 (2015) ("The mere fact that the government has 'occupied' the creative work (whatever that might mean) would not necessarily deprive the owner of the ability to use the work or exclude third parties.").

[7] *Cf. Lucas*, 505 U.S. at 1018 (explaining that functional basis for limiting categorical compensation for regulatory takings is that "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law" (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922))); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 835 n.4 (1987) (noting that a principal purpose of the Takings Clause is to bar government from singling out individuals to bear burdens that should be borne by the public as a whole).

**II**

Although we have described Article I, Section 17 of the Texas Constitution as "comparable" to the Takings Clause of the United States Constitution, *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 56 (Tex. 2006), and cases applying Article I, Section 17 as "consistent with federal jurisprudence," *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012), we have also recognized that the Texas Takings Clause provides broader protection in certain areas. *See Steele v. City of Houston*, 603 S.W.2d 786, 789–91 (Tex. 1980) ("The underlying basis for compensating one whose property is taken or damaged or destroyed for public use may . . . be the same . . . . But the terms have a scope of operation that is different.").

That recognition is hardly surprising given the obvious textual differences between the clauses. The Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be *taken* for public use, without just compensation." (emphasis added). In contrast, the Texas Constitution provides that "[n]o person's property shall be *taken*, *damaged*, or *destroyed* for or *applied* to public use without adequate compensation." TEX. CONST. art. I, § 17(a) (emphasis added). The Texas Takings Clause contains three additional verbs.[8] The first two, "damaged" and "destroyed," are, like "taken," prepositionally connected to "public use" by "for." The third, "applied," is connected by "to." Under the principles we use to interpret the Texas Constitution, each term should be given meaning.[9]

---

[8] In *City of Dallas v. Jennings*, we noted that "taking" has become a shorthand for "taking," "damaging," and "destroying," but that each verb creates a separate and distinct claim under Article I, Section 17. 142 S.W.3d 310, 313 n.2 (Tex. 2004) (citing *Steele*, 603 S.W.2d at 789–91).

[9] When construing constitutional text, we rely on the plain language, give effect to each word to avoid surplusage, and avoid constructions that would render provisions meaningless. *Spradlin v. Jim Walter Homes, Inc.*,

Looking to the terms' historical origins, "damaged" and "destroyed" have been treated as distinct from "taken." Before the 1876 Constitution was adopted, the government had an express duty to compensate owners for taking property, but not necessarily for damaging or destroying it. *See* TEX. CONST. of 1869, art. I, § 14 ("[N]o person's property shall be taken or applied to public use, without adequate compensation being made . . . ."); *State v. Hale*, 146 S.W.2d 731, 737 (Tex. 1941) (noting that Article I, Section 14 of the Texas Constitutions of 1845, 1861, 1866, and 1869 did not contain the damage or destruction language). The addition of the terms damaged and destroyed provided Texas courts in the late nineteenth and early twentieth centuries with a textual basis for requiring compensation when the value of property was diminished without physical appropriation. *See McCammon & Lang Lumber Co. v. Trinity & B.V. Ry. Co.*, 133 S.W. 247, 250 (Tex. 1911) ("The words 'damaged or destroyed' show the purpose to secure compensation for losses not within the language previously used, and evidently were intended to include effects upon private property of public enterprises which might be held not to constitute takings."). Federal takings jurisprudence later expanded to cover some of the same ground, requiring compensation for even minimal permanent physical occupations (*Loretto*) and for regulatory takings.

Turning to cases, we have applied the "damaged" and "destroyed" prongs to require compensation in cases that do not fit neatly into the categories used to analyze claims under the

---

34 S.W.3d 578, 580 (Tex. 2000). We also rely on the traditional canon of statutory construction *noscitur a sociis*— "it is known by its associates"—to construe individual words in lists, so as not to ascribe to listed words "meaning so broad that [they are] incommensurate with the statutory context." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015).

6

narrower federal Takings Clause.  One line of cases applying the "damaged" prong has required compensation when the government impairs access to private property by constructing or operating public works.[10]  These cases have also informed our regulatory takings analysis under the "taken" prong, which requires compensation when government actions "constitute an unreasonable interference with the landowner's right to use and enjoy the property."[11]

Other cases applying the "damaged" and "destroyed" prongs indicate that the Texas Takings Clause requires compensation for a broad range of harm to property.  *See Steele*, 603 S.W.2d at 791 (concluding that a claim against police officers for destroying a house was made "under the authority of the Constitution" and "not grounded upon proof of either tort or nuisance"); *Austin v. Teague*, 570 S.W.2d 389, 393 (Tex. 1978) (referring to the "damaged" prong as "expand[ing] the owner's right to compensation").[12]  For example, our cases recognize that physical damage to property can be compensable if the government acted with at least substantial certainty that the specific damage would result and the damage was inflicted for public benefit.[13]

---

[10] *See DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965) (recognizing settled rules that "an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage"); *see also State v. Heal*, 917 S.W.2d 6, 9–10 (Tex. 1996) (applying *DuPuy* to residential property); *City of Austin v. Ave. Corp.*, 704 S.W.2d 11, 13 (Tex. 1986) (recognizing that both partial and temporary restrictions of access may be compensable); *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex. 1969) (requiring "material and substantial" impairment of access).

[11] *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994) (citing *City of Austin v. Teague*, 570 S.W.2d 389, 393 (Tex. 1978)); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935 (Tex. 1998) (holding that compensation is required when regulations (1) do not substantially advance a legitimate governmental interest, or (2) either deny owner all economically viable use of its property or unreasonably interfere with its rights to use and enjoy property).

[12] *See also Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 558 (Tex. 2004) (discussing distinction between takings claim and damage claim when property is flooded).

[13] *See City of Dallas v. Jennings*, 142 S.W.3d 310, 315 (Tex. 2004) ("[W]hen [the government] physically damages private property in order to confer a public benefit, [it] may be liable under Article I, Section 17 if it (1) knows

7

We have also distinguished between the remedies available for "taken" and "damaged" claims. Because government takings that are threatened or attempted without consent, compensation, or for non-public purposes constitute unlawful actions, property owners may obtain injunctive relief to prevent such takings. *McCammon*, 133 S.W. at 248. Conversely, if an attempted government action would only result in damage to private property, it would not necessarily be unlawful "merely because compensation is not made in advance." *Id.*

The final verb in the Texas Takings Clause, "applied," has not previously been addressed by this Court. Unlike "damaged" and "destroyed," "applied" has been included as an alternative to "taken" in each iteration of the Texas Constitution. *See, e.g.*, TEX. CONST. of 1869 (including the phrase "taken or applied to public use"). Because takings jurisprudence has developed primarily with tangible property interests in mind, it is understandable that claims of private property being "applied to public use" have been infrequent. After all, applying and taking are functionally equivalent when the possession and ownership of physical things are at issue; for example, applying land to public use would almost always involve total appropriation or permanent physical occupation. *Cf. Loretto*, 458 U.S. at 441.

---

that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result . . . ."); *Gragg*, 151 S.W.3d at 554–55 ("[Public use] is the factor which distinguishes a negligence action from one under the constitution for destruction." (quoting *Steele*, 603 S.W.2d at 792)); *Hale*, 146 S.W.2d at 736–37 (holding that damaging of property for public use applies only if it is done in the exercise of lawful authority); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 808 n.3 (Tex. 2005); *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997); *Steele*, 603 S.W.2d at 790–92; *Tex. Highway Dep't v. Weber*, 219 S.W.2d 70, 71 (Tex. 1949). The *Jennings* substantial-certainty test is also part of our takings analysis for temporary physical occupations, *see Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 800 (Tex. 2016), which one scholar recognized as a potential solution to the "murk[y]" federal standard. *See* Sandra B. Zellmer, *Takings, Torts, and Background Principles*, 52 WAKE FOREST L. REV. 193, 217–20 (2017).

Given the plain language of the "applied to public use" prong and our cases interpreting the "damaged for public use" prong, it is possible that a government entity's violation of a private author's rights in a copyrighted work could in some circumstances require compensation under Article I, Section 17 of the Texas Constitution. For example, would compensation be required if a state university allowed its employees and students to stream copyrighted movies without the owners' permission, or if it gave an unauthorized license to a printer to make copies of a copyrighted textbook and then distributed them to its students (or to students across Texas) for free? Nothing in the Court's opinion should be understood to indicate a view on such questions because Olive has alleged no claim under the "damaged" or "applied" prongs of the Texas Takings Clause.

Rather, Olive alleges only that the University's publication of his photograph "resulted in a taking . . . in violation of Article I, section 17." In addition, as the Court points out, Olive argues only that the University's actions constitute a per se taking, and he does not contend that the analysis should be any different under the Texas Constitution. Therefore, with these additional observations, I join the Court's opinion concluding that Olive has not alleged a per se taking under either the United States or Texas Constitution and affirming the dismissal of this suit based on sovereign immunity.

_____
J. Brett Busby
Justice

Opinion delivered: June 18, 2021

9