## CITY OF ABILENE v. McMAHAN.
(No. 615–4206.)

(Commission of Appeals of Texas, Section B. March 16, 1927.)

**1. Courts ⚖247(7)—For "conflict" in decisions to confer jurisdiction upon Supreme Court in county court cases, ruling must be upon same question.**

The "conflict" in decision of Court of Civil Appeals, with prior decision of Court of Civil Appeals or Supreme Court, which will confer jurisdiction upon Supreme Court in county court cases, must be upon a question of law involved and determined, and facts must be such that one decision would overrule the other if both were rendered by the same court; inconsistency in principles announced or in application of recognized principles being insufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conflict.]

**2. Courts ⚖247(7)—Decision of Court of Civil Appeals that petition alleging depreciation in value of land by municipal corporation's maintenance of dam stated cause of action held not in conflict with controlling Supreme Court decision.**

Decision of Court of Civil Appeals, holding that petition alleging that petitioner's property had depreciated in value because of a permanent menace of threatened overflow from dam constructed by municipal corporation for public use stated a cause of action, held not in conflict with holding of Supreme Court in Austin, etc., Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, deciding that, where an offending structure is not a constant and continuing injury, no cause of action accrues until happening of such actual injury.

**3. Courts ⚖247(7)—Decision of Court of Civil Appeals that petition alleging depreciation in value of land by municipal corporation's maintenance of dam stated cause of action held not in conflict with decision of Court of Civil Appeals in other cases.**

Decision of Court of Civil Appeals, holding that petition alleging that petitioner's property had depreciated in value because of a permanent

menace of threatened overflow from dam constructed by municipal corporation for public use stated a cause of action, held not in conflict with holding of Court of Civil Appeals in Rigdon v. Temple, etc., Co., 11 Tex. Civ. App. 542, 32 S. W. 828, deciding that waterworks company is liable for damages proximately resulting from fall of a water tower negligently constructed on its own premises, nor with holding in Sanders v. Miller, 52 Tex. Civ. App. 372, 113 S. W. 996, deciding that excavation for surface water, if nuisance, was abatable.

**4. Damages ⚖26—Consequential damages are recoverable, if there is reasonable probability of consequences.**

Reasonable probability of consequences is sufficient to authorize recovery for consequential damages.

**5. Courts ⚖247(7)—When jurisdiction of Supreme Court depends upon conflict of decisions, and no conflict exists, court has no jurisdiction to decide other questions (Rev. St. 1925, art. 1821[1]).**

When jurisdiction of Supreme Court depends upon existence of conflict in decision of Courts of Civil Appeals with prior decisions of the Court of Civil Appeals or Supreme Court, and no conflict exists, Supreme Court has no jurisdiction to decide any question in case, and writ of error to Court of Civil Appeals should, under Rev. St. 1925, art. 1821(1), be dismissed.

**6. Courts ⚖247(1)—To authorize Supreme Court to assume jurisdiction, some ground enumerated in statute must exist (Vernon's Ann. Civ. St. 1925, art. 1728).**

To authorize Supreme Court to assume jurisdiction some one or more of grounds prescribed in Vernon's Ann. Civ. St. 1925, art. 1728, pursuant to Const. art. 5, § 3, must exist.

**7. Appeal and error ⚖782—Writ of error should be dismissed if jurisdictional grounds are wanting.**

Though writ of error to the Court of Civil Appeals has been granted, it should be dismissed if upon further consideration court determines that jurisdictional grounds are wanting.

**8. Courts ⚖247(1)—When Supreme Court acquires jurisdiction for error of law of such importance as in opinion of court to require correction, decision will be limited to jurisdictional question (Vernon's Ann. Civ. St. 1925, art. 1728[6]).**

For Supreme Court to acquire jurisdiction under Vernon's Ann. Civ. St. 1925, art. 1728 (6), there must be an error of law, and it must be of such importance to jurisprudence of state as in opinion of Supreme Court requires correction, and decision will be limited to error assigned as jurisdictional.

**9. Appeal and error ⚖859—When Supreme Court acquires jurisdiction on grounds other than for error which within opinion of court requires correction, court will decide all questions of law (Vernon's Ann. Civ. St. 1925, art. 1728).**

When Supreme Court acquires jurisdiction under Vernon's Ann. Civ. St. 1925, art. 1728, on

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

grounds other than prescribed in subdivision 6, for error of law of such importance to jurisprudence of state as in opinion of Supreme Court requires correction, court will determine all properly presented questions of law requisite to correct decision of case.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by D. McMahan against the City of Abilene. Judgment for defendant was reversed by the Court of Civil Appeals (261 S. W. 455), and defendant brings error. Writ dismissed.

Davidson & Hickman, of Abilene, for plaintiff in error.

Kirby, King & Overshiner, of Abilene, for defendant in error.

SPEER, J. This writ of error was granted to review the judgment of the Court of Civil Appeals, wherein it reversed the judgment of the trial court and remanded the cause for the error of the trial court in sustaining a general demurrer to plaintiff's petition wherein defendant in error was plaintiff and plaintiff in error was defendant. 261 S. W. 455. The case was tried below before the county court, and the jurisdiction of the Supreme Court therefore depends upon whether or not the decision in this case is in conflict with other decisions cited in the application for the writ. Unless there is such conflict, the Supreme Court has no jurisdiction, and the writ must be dismissed. Revised Civil Statutes, art. 1821 (1). As grounds of jurisdiction, the petition declares the decision is in conflict with the holding of the Supreme Court in Austin, etc., Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, and with the holding of the Court of Civil Appeals in the cases of Rigdon v. Temple, etc., Co., 11 Tex. Civ. App. 542, 32 S. W. 828, and Sanders v. Miller, 52 Tex. Civ. App. 372, 113 S. W. 996.

[1] The "conflict" which will confer jurisdiction upon the Supreme Court in county court cases has been often defined, and never more satisfactorily than in Garitty v. Rainey, 112 Tex. 369, 247 S. W. 825, wherein Mr. Chief Justice Cureton said:

"The conflict in decisions of Courts of Civil Appeals which will authorize this court to issue a writ of mandamus and require certification must be upon a question of law involved and determined, and such that one decision would overrule the other if both were rendered by the same court. The conflict must be well defined. An apparent inconsistency in the principles announced, or in the application of recognized principles, is not sufficient. The rulings must be so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other. In other words, the rulings alleged to be in conflict must be upon the same question, and unless this is so, there can be no conflict. Coultress v. City of San Antonio, 108 Tex. 150, 179 S. W. 515 [187 S. W. 194]; McKay v. Conner, 101 Tex. 313, 107 S. W. 45."

This clear statement of the rule has been constantly followed and never departed from.

Applying the test above prescribed, let us examine the cases and see if there exists that conflict essential to confer jurisdiction.

[2] The holding of the Court of Civil Appeals in this case is that the plaintiff's petition, containing the following material allegations, stated a cause of action:

"That plaintiff was the owner of a tract of land on Elm creek upon which he had resided for many years; that his residence, outhouses, garden, etc., were situated in the valley of the creek upon the land and above the ordinary overflow of the creek, and he and his family were entitled to occupy and enjoy the premises in peace and contentment, free from the annoyances and inconveniences caused by the defendant as hereinafter stated; that he and his family had used and occupied the land for many years free from such annoyances, etc.; that on or about May 26, 1921, the defendant constructed a great earthen dam across Elm creek about four miles above plaintiff's land, the dam being about one mile long, upwards of 60 feet high, whereby defendant impounded several billion gallons of water; that the creek is a small stream ordinarily less than 30 feet wide and the low lying land near its banks sufficient to carry the ordinary flow and overflow waters of the stream; that the erection of such dam by the defendant was an unreasonable use of its property, unlawful, and an annoyance, hurt, and detriment to plaintiff, and decreased the value of his property in this, that, should the dam break, which is always a possibility and probable contingency with earthen dams, a vast volume of water would be suddenly released and flow down the valley and inundate all of the low lying land and premises of plaintiff including the land upon which the residence and other improvements were situate, and such residence and improvements be thereby destroyed and the safety of plaintiff and his family and their lives imperiled; that shortly after the construction of the dam it sprung a leak which rapidly grew, and the dam would have been swept away but for a providential caving which stopped the leak; that the construction of the dam was a hurt, annoyance, and detriment to plaintiff and his family, diminished the value of his land, and is a private nuisance as to plaintiff; that after the construction of the dam plaintiff and his family occupied his home in continual fear, especially after the dam sprung a leak, fearing for their lives and property from inundation of the premises by the breaking of the dam, and there is even now a leakage and seepage from the dam which ultimately may cause it to break and flood plaintiff's land, and that his home is thereby rendered less desirable; he and his family have suffered annoyance and inconvenience and his land thereby diminished in value; that plaintiff abated such nuisance in so far as he could by removing his residence, barn, outhouses, and fences to higher ground above the danger of overflow from breaking of the dam and constructed new improvements on the higher ground; and that he was entitled to recover the reasonable and necessary expenses incurred by him in so moving and reconstructing his improvements, the cost of which was alleged to be $1,000, and was itemized. He further alleged that, if he should be mistaken in the meas-

ure of his damage, and it was held that the construction of the dam is a permanent nuisance, then in the alternative he alleged a depreciation in the value of his land in the sum of $1,000, caused by the construction of the dam. Judgment was prayed for his damage aforesaid."

The gist of this holding is that plaintiff in error, a municipal corporation, having damaged defendant in error's property for a public use by the construction of a dam impounding such large quantities of water upon the stream above such property as to permanently and constantly menace and endanger it to its depreciation in value in the amount named, is liable therefor to defendant in error, irrespective of the question of negligence in the construction of such dam, and irrespective of the question of nuisance in its maintenance, further than the question of nuisance is necessarily involved in the constitutional provision that "no person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person." Const. of Tex. art. 1, § 17. Of the cases cited for the conflict, Austin v. Anderson holds that, even though the construction of a railroad embankment affecting plaintiff's land was permanent, yet where there was no constant and continuing injury, but such injury only recurred upon occasions, the cause of action for damages would not arise until such injury was actually inflicted, at intervals, by diverting water from rainfalls from its usual overflow upon plaintiff's land. The holding in this case and the one under review are not upon the same question. The decision in the one case will in no wise decide the question in the other. In the Austin-Anderson Case the real holding is, where an offending structure is not a constant and continuing injury, but only produces injury occasionally or at intervals, no cause of action accrues until the happening of such actual injury; while the holding in the present case is that the structure complained of, impounding a vast volume of water by an earthen dam across a broad area above plaintiff's property in such a way as to destroy it in the event such dam should break and the water escape down the stream, such dam was a permanent nuisance, that the breaking of such dam was a possible and probable contingency, and that plaintiff's lands in consequence were diminished in value to the extent named. It is apparent, therefore, that the present case is unlike the Austin-Anderson Case in this, that the injury complained of—that is, the menace and threat of a probable break in the dam and inundation of plaintiff's property to its destruction—was a constant and continuing one. That the right to recover damages once for all time where the structure is permanent and the injury constant is held in Rosenthal v. Taylor, etc., Ry. Co., 79 Tex. 325, 15 S. W. 268, wherein Mr. Justice Gaines, afterward Chief Justice, for the court, said:

"When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have occurred only up to the time of the action will be allowed; but if the nuisance is permanent and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rainfall, and continues during a stage of offensive stagnation until the water evaporates. The defendants seem to have treated the work as permanent, since they have failed, upon application, to make a culvert for the passage of the water; and we are of opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury."

We cite this case to show, not that there is a conflict between it and the Austin-Anderson Case, but rather that there is no conflict. In other words, the questions decided in the two cases are different questions, and the one is not at all decisive of the other. They are in perfect harmony. The present case, under the allegations of the petition, is more analogous to the Rosenthal Case, in that the injury complained of is alleged to be present and continuous and its cause permanent. So that, whether the present holding is right or wrong, it is not in conflict with the question decided in Austin v. Anderson.

[3] In Rigdon v. Temple, it is merely decided that a waterworks company is liable for the damages proximately resulting from the fall of a water tower negligently constructed on its own premises. It is obvious the holding in this case in no wise conflicts with that holding. The holding in that case was predicated upon the negligence of the Temple Waterworks Company, through which negligence the plaintiff suffered damage from the fall of the water tower. In the present case, the liability of plaintiff in error is in no wise predicated upon negligence, for the holding is that the city is liable in the absence of all negligence, if its structure has damaged defendant in error's property for a public use. The last case relied upon to show conflict (Sanders v. Miller) holds that an excavation for surface water on premises near the plaintiff's residence, if a nuisance liable to produce damages, is yet an abatable one, the pool not being for a public use, so that the plaintiff could recover, not for a permanent injury, but merely damages to the date of trial or abatement of the nuisance. No such question is involved in the present case, since the structure, being a public one, cannot be abated, and the reason for the holding in the Sanders-Miller Case does not exist in this one.

Furthermore, the feature in this case, immediately above adverted to, does not exist in any of the cases thought to be in conflict, and clearly distinguishes the question of law involved from that decided in any of the cases

cited. We refer to the fact that the petition shows the plaintiff in error is a municipal corporation, and the structures complained of constitute a public use, resulting in damage to plaintiff's property. In such a case, damages are permitted, not because of negligence, and yet not because of any feature of nuisance as that term is commonly understood, but by virtue of the constitutional provision which has already been set out in this opinion. This feature alone distinguishes this case from any other that has been cited. Whether a plaintiff, whose property is menaced and threatened by the construction of an earthen dam above, impounding billions of gallons of water, which is liable to be precipitated upon his property by a breaking of the dam, may recover for the depreciated value of his property, under the constitutional provision quoted, is not involved or decided in any of the cases alleged to be in conflict with the decision herein. That is exactly the case presented here.

It is contended strenuously by plaintiff in error that defendant in error cannot recover in this case for its speculative and uncertain damages which exist only in his fears based upon the possibility of the dam's breaking. We are not deciding that he can or he cannot. We are merely deciding that the holding in this case, in effect that he can recover such damages is not in conflict with any of the cases cited by plaintiff in error. We have no right to pass upon such question unless the conflict of holding alleged actually exists.

[4] In this connection we may add, however, defendant in error is not seeking to recover presently the value of injuries that may occur in the future, caused by an overflow resulting from a break in the dam, but his suit is predicated upon the theory that his property has sustained a present permanent injury by reason of the permanent, constant menace of threatened overflow and the depreciation of its value has followed and exists whether or not such threatened overflow ever actually occurs. It is for the depreciation in value, produced by the reasonable probability of such overflow that he recovers. It appears that a reasonable probability of consequence is all that is required to authorize a recovery for consequential damages. In this state the rule seems to be that it is sufficient, to authorize a recovery for apprehended future consequences that such result is likely or reasonably probable. Galveston, etc., R. Co. v. Powers, 101 Tex. 161, 105 S. W. 491; International, etc., R. Co. v. Clark, 96 Tex. 349, 72 S. W. 584; Gulf, etc., R. Co. v. Harriett, 80 Tex. 73, 15 S. W. 556.

[5] Since the Supreme Court's jurisdiction depends upon the existence of the conflict relied upon, and since we have concluded no such conflict exists, it would logically follow, we think, that the Supreme Court has no jurisdiction to decide any question whatever in the case. The jurisdiction of the Supreme Court rests upon a grant from the legislative department of the government. It must find its sanction in the Constitution or the statutes. The Constitution (article 5, § 3) declares:

"The Supreme Court shall have appellate jurisdiction only, except as herein specified, which shall be coextensive with the limits of the state. Its appellate jurisdiction shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe."

The Legislature has prescribed those restrictions as follows:

"The Supreme Court shall have appellate jurisdiction coextensive with the limits of the state, extending to all questions of law arising in the following cases when same have been brought to the Courts of Civil Appeals from final judgment of trial courts:

"1. Those in which the judges of the Courts of Civil Appeals may disagree upon any question of law material to the decision.

"2. Those in which one of the Courts of Civil Appeals holds differently from a prior decision of its own, or of another Court of Civil Appeals, or of the Supreme Court upon any such question of law.

"3. Those involving the construction of the validity of statutes.

"4. Those involving the revenues of the state.

"5. Those in which the Railroad Commission is a party.

"6. In any other case in which it is made to appear that an error of law has been committed by the Court of Civil Appeals of such importance to the jurisprudence of the state as in the opinion of the Supreme Court requires correction, but excluding those cases in which the jurisdiction of the Court of Civil Appeals is made final by statutes. Upon the showing of such an error the Supreme Court may in its discretion grant a writ of error for the purpose of revising the decision upon such question alone and of conforming its judgment to the decision thereof made by it." Vernon's Ann. Tex. Stat. art. 1728.

[6, 7] Now it is elementary that in any case some one or more of the grounds enumerated must exist to authorize the Supreme Court to assume jurisdiction at all. In the absence of such showing, the application for writ of error to the Court of Civil Appeals will be dismissed for want of jurisdiction. The absence of any of the statutory grounds—in other words, a want of jurisdiction—is fatal to the authority of the court to decide any question involved in the case. It can make no difference that a writ has been improvidently granted if in fact the court upon further consideration determines that the jurisdictional grounds are wanting. In such a case, the writ should be dismissed. Granting a writ where no grounds of jurisdiction actually exist cannot supply the missing essentials and confer jurisdiction. If it were true, the Constitution and statutes limiting the jurisdiction would mean nothing, for the court could,

by the simple expedient of granting the writ, draw to itself power to decide any question in any case.

[8] In Hartt v. Yturia Cattle Co. (Tex. Com. App.) 228 S. W. 551, in an opinion by Judge Powell of Section B of the Commission, where a writ of error had been granted under subdivision 6 of the statutes above quoted, the Supreme Court dismissed the writ upon ascertaining that the ground of jurisdiction relied upon did not exist. Subdivision 6 is unlike the other subdivisions and is peculiar, in this respect, that the jurisdiction of the Supreme Court is not determined by anything fixed or definite, but rather by the Supreme Court's opinion as to the character of the error shown. In other words, under subdivision 6, before jurisdiction attaches there must not only be shown an error of law, but it must appear to be one "'of such importance' to the jurisprudence of the state as in the opinion of the [Supreme] Court requires correction." So that, where jurisdiction depends upon this subdivision, the Supreme Court must determine that an error of this character has been committed before it has any jurisdiction whatever. Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385.

It will not do to say the court, having acquired jurisdiction, will retain it to the end because it is not true in such a case that the court ever acquired jurisdiction.

[9] The case of Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185, while not directly in point, is very helpful, as it discusses some questions closely akin to the one under consideration. The opinion in that case, written by Associate Justice Greenwood, makes clear that, where the Supreme Court acquires jurisdiction under any subdivision of the statute, it is clothed with the power, and, with one exception as to subdivision 6, with the duty, to determine all properly presented questions of law requisite to a correct decision of the case. That exception with respect to subdivision 6 is of no importance in this case, but refers to a discretionary power specially conferred in the statute, which has the effect to limit the decision to the error assigned as jurisdictional. In the Holland-Nimitz Case it is clear the ground of jurisdiction upon which the writ of error was granted actually existed, so that the court had authority to determine the case, which by construction was held to extend to every question of law properly presented therein. The point is well illustrated in a quotation in that case as follows:

"It is the case, not merely the question as to the statute, over which the jurisdiction is extended by the language. The *existence of the question* is the reason why the *jurisdiction* is given, but it is the case that is brought within it." (Italics ours.)

We think it will be found in those cases where the Supreme Court has undertaken to pass upon all the questions of law presented by the application, notwithstanding some of the errors, even those perhaps upon which the writ was tentatively granted, had gone out of the case, there was jurisdiction over the case by reason of the existence of one or more of the statutory grounds of jurisdiction. This is notably true in the Decker v. Kirlicks Case, supra, and many others of like kind.

This is a county court case, and there is no contention that the Supreme Court has jurisdiction except upon the ground of conflict, and, since that ground does not exist, the Supreme Court has no jurisdiction whatever to decide any question presented in the case.

We are not discussing the effect of a decision where the court wrongfully exercises jurisdiction. That is determined by other considerations in no wise controlling here. See Ware v. Jones (Tex. Civ. App.) 248 S. W. 429; Id. (Tex. Com. App.) 250 S. W. 663; Washington, etc., Co. v. Stewart, 3 How. 413, 11 L. Ed. 658.

We therefore recommend that the writ of error heretofore granted be dismissed.

CURETON, C. J. Writ of error dismissed for want of jurisdiction, as recommended by the Commission of Appeals.