George S. ATKINSON et al., Appellants,

v.

CITY OF DALLAS, Appellee.

No. 16038.

Court of Civil Appeals of Texas.

Dallas.

Dec. 15, 1961.

Rehearing Denied Jan. 19, 1962.

James P. Donovan, Dallas, for appellants.

H. P. Kucera, City Atty., and N. Alex Bickley and Thomas B. Warren, Assts. City Atty., Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from a summary judgment.

On April 3, 1961 appellant George S. Atkinson and 35 other persons, with the later addition of 10 more persons, filed a class suit against the City of Dallas, Texas, seeking to enjoin the City from constructing a new parallel runway at Love Field Municipal Airport.

Appellants' petition asked for a temporary injunction, which was denied after a hearing which lasted three days. At this hearing testimony was heard from eight witnesses, which testimony occupies 578 pages in a statement of facts in addition to 47 exhibits.

Some time thereafter the City of Dallas filed its motion for summary judgment and appellants filed their answer to appellee's motion. On July 17, 1961 appellee's motion for summary judgment was sustained. Appellants were denied a permanent injunction.

The record before the trial court when appellee's motion was sustained consisted of the pleadings and the evidence and exhibits which had been introduced at the hearing on appellants' application for temporary injunction. The transcribed testimony and the exhibits were made a part of the City's motion for summary judgment and are part of the record before us on this appeal.

In their first and seventh points on appeal appellants assert that the trial court erred in holding as a matter of law that the proposed construction of the runway is not a threatened taking of appellants' property rights without compensation in violation of the provisions of the Constitution of the United States and of Texas and of the Texas Statutes. More particularly appellants claim that the City is threatening to seize and take the air rights over appellants' property through the construction and use of the nearby runway without compensation and without condemnation or purchase; and that they will suffer irreparable damage with no adequate remedy at law

Appellants say that the proposed construction and use of the runway violates the 14th Amendment to the Constitution of the United States, Art. 1, §§ 17 and 19

·of the Constitution of the State of Texas, Vernon's Ann.St., and the following State Statutes: Arts. 46d–2, 46e–13, 3268, and .3269 Vernon's Ann.Tex.St.

Art. 46d–2 V.A.C.S. of the Municipal Airports Act, enacted in 1947, authorizes municipalities to establish, acquire and maintain airports. The Act took the place ·of certain prior existing statutes. Art. ·46d–15 of the Act expressly declares that the exercise of the powers so granted shall be considered public and governmental functions. In City of Corsicana v. Wren, 159 Tex. 202, 317 S.W.2d 516 the Supreme ·Court of Texas held that the said declaration in the statute was not violative of Art. 1, §§ 13 and 19 of the Constitution of the :State of Texas, or the 14th Amendment of the Constitution of the United States. The Court further held that the City of ·Corsicana was immune from liability for the negligence of its employee in the op- ·eration of its airport.

Appellants allege that if the runway is ·constructed airplanes will fly over their property, causing noises, vibrations and dis- ·turbances which will expose appellants to ·permanent mental and physical injury, and ·do irreparable damage to their property ·due to increased insurance rates, reduced rental values, etc. This, according to ap- ·pellants, constitutes a taking of their prop- ·erty without compensation and without ex- ·ercising the power of eminent domain.

The position taken by appellants is that .Art. 46e–13 V.A.C.S. makes it the duty of the City to condemn airspace which cannot be provided for by the Airport Zoning Statute, Art. 46e–3, V.A.C.S. We think these statutes deal only with landing and take-off hazards and the elimination of ·present and future obstructions to the approach and departure of aircraft. There is no proof that approach hazards to air- ·craft exist now or are likely to exist on the properties of appellants, consequently Art. 46e–13 is not applicable.

We cannot agree with appellants ·that the facts alleged by them constitute a taking of their property as contemplated by Art. 1, § 17 of the Constitution of the State of Texas and the State Eminent Domain Statute. The proposed runway will be wholly within the boundaries of Love Field Airport and wholly on land owned by the City. There is evidence in the record that appellants' properties lie 2200 feet or more from the runway. None of appellants own any part of the ground on which the runway will be located. It is not claimed that the City will take over appellants' property by actual physical possession.

There is a difference between a taking of property and a damaging of property. The difference is discussed in McCammon & Lang Lbr. Co. v. Trinity & B. V. R. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A.,N.S., 662. In that case, speaking of the meaning of "taking" the Court said:

> "Whether the compensation is first to be made must, of course, depend upon the answer to the question whether or not there is to be a taking. Whatever may be the full meaning of the words 'property' and 'taking,' in the Constitution, there is no escape from the conclusion that the first includes the fee-simple title to the thing owned, whether it be burdened with an easement or not, and that the latter includes the appropriation of that thing, or of some interest or estate in it, by actual physical possession, such as exists when a railroad is constructed and operated upon it G[ulf], C. & S. F. Ry. Co. v. Lyons, 2 Willson, Civ.Cas.Ct.App. § 139, and authorities cited."

In this case the City does not propose to take actual physical possession of any of appellants' properties.

We do not hold in this opinion that appellants have a cause of action for damages, for that question is not before us. However, we do hold that if appellants have a cause of action at all, it is for damages to their property not for a taking of their property within the meaning of the Constitution and Eminent Domain Statutes. City of Dallas v.

Megginson, Tex.Civ.App., 222 S.W.2d 349; Williams v. City of Dallas, Tex.Civ.App., 52 S.W.2d 373; Duvall v. City of Dallas, Tex.Civ.App., 27 S.W.2d 1105; City of Abilene v. McMahan, Tex.Com.App., 292 S. W. 525; Baugh v. Texas & N. O. R. Co., 80 Tex. 56, 15 S.W. 587. Appellants' first and seventh points are overruled.

■ In their second point appellants allege error in the court's holding as a matter of law that the construction of the proposed runway would not constitute a nuisance.

It is undisputed that the proposed runway will be a permanent improvement constructed by a municipality for a public use pursuant to legislative authority. Therefore, it is not legally a nuisance. Williams v. City of Dallas, 52 S.W.2d 373 (Syl. 4); City of Abilene v. McMahan, Tex.Com.App., 292 S.W. 525, 528; Aycock v. San Antonio Brewing Association, 26 Tex.Civ.App. 341, 63 S.W. 953, 955. Moreover, even if we were to say that the proposed runway could legally be a nuisance, appellants' cause of action, if any, would be for damages, not for injunction. City of Dallas v. Winans, Tex.Civ.App., 262 S.W.2d 256; Baugh v. Texas & N. O. Ry. Co., 80 Tex. 56, 15 S.W. 2d 587. Appellants' second point is overruled.

■ Appellants in their third point charge that the court erred in holding as a matter of law that the proposed runway if constructed would not be in violation of the Municipal Airports Act requiring construction to be consistent with Acts of Congress and all regulations or standards established pursuant thereto. Specifically, appellants claim that the construction of the runway would be violative of Acts. 46d–2(d) and 46d–7(b) V.A.C.S.

The point is not well taken. Section 1350, Title 49, U.S.C.A. provides that if no Federal funds are applied for the only approval required of the Administrator of the Federal Aviation Agency is as to the "use of airspace by aircraft." The Federal Govern-

ment is not contributing any funds to the construction of the proposed runway. The City of Dallas, through the sale of revenue bonds, will furnish all the funds necessary for the construction of the runway. The record shows that the City already has the approval of the Administrator as to the "use of airspace by aircraft."

Furthermore, we think that if any complaint on this score is to be made, it should be made by the Federal Aviation Agency, not by appellants. The Federal Aviation Agency, not the City of Dallas, operates the airport's control tower and will determine who may use the runway. It is up to the Agency to apply its regulations. City of Newark v. Eastern Airlines, Inc., D.C., 159 F.Supp. 750. In the case now before us neither the Airlines who will use the runway, nor the Federal Government are parties to the action, though it is held in Bourland v. City of San Antonio, Tex.Civ.App., 347 S.W.2d 660 that they are indispensable parties. Appellants' third point is overruled.

Appellants' fourth and sixth points allege error on the court's part in holding as a matter of law that the proposed runway is a necessary public improvement and that the action of the City is not arbitrary and capricious.

■ The undisputed evidence in this case shows that Love Field Airport has been in operation by the City since the year 1922 and has been owned by the City since 1928. From time to time as air traffic at the airport has increased the airport and its facilities have been enlarged and expanded to meet the ever growing demands of the public. The construction of the proposed runway will merely be another in a succession of expansions to meet the growing needs. The statutes entrust to the municipal authorities the responsibilities of deciding when a necessity exists to make such public improvements and the courts may not review the decisions of the proper municipal authorities in that respect unless such decisions are arbitrary and without reason. Under the undisputed circumstances presented in.

this record there is no support for a finding that the action of the City Authorities is arbitrary or without reason. City of Corsicana v. Wren, 159 Tex. 202, 317 S.W.2d 516; Town of Ascarate v. Villalobos, 148 Tex. 254, 223 S.W.2d 945; Gillham v. City of Dallas, Tex.Civ.App., 207 S.W.2d 978; Sitterle v. Victoria Cold Storage Co., Tex. Civ.App., 33 S.W.2d 546; and West v. Whitehead, Tex.Civ.App., 238 S.W. 976. Appellants' fourth and sixth points are overruled.

■ In their fifth point appellants say that the court erred in holding as a matter of law that the new runway was not a donation or a loan of credit to private corporations or associations in violation of Art. 3, § 52 of the Constitution of Texas.

Art. 46d–4 V.A.C.S. provides that cities operating airports are given authority to enter into contracts and lease arrangements not to exceed 40 years with airlines and other users of the airport, and may also fix charges for the use of the airport facilities and operate the airport as a utility. Art. 46d–11 provides that all revenues arising from the operation of the airport shall be appropriated solely to, and used by the municipality for purposes authorized by the Municipal Airports Act.

We find no donations or loan of the City's credit contemplated in these provisions, or in the City's plans of operation. Appellants' fifth point is overruled.

■ In their eighth and tenth points appellants assert that the court erred in holding that the proposed issue of bonds was legal, and was not violative of statutory and constitutional restrictions as to bond issues and debt limits; and in holding that the City could legally issue revenue bonds to finance construction of the runway without first submitting a proposition for the issuance of the bonds to the qualified voters who are tax payers of the City.

The City proposes to finance the construction of the runway by the issuance of revenue bonds in the amount approximately of $5,000,000. The ad valorem bond limit of the City has been fixed at $135,000,000. The sworn pleadings of the City allege that at the time of the trial there were $117,000,000 of ad valorem tax bonds outstanding. Appellants claim the amount of outstanding tax bonds is greater. We shall not try to reconcile this difference for in our opinion the question is immaterial to our decision in this case.

■ Revenue bonds are not considered as debts coming within constitutional and statutory restrictions on the amount of municipal debts. City of Seymour v. Municipal Acceptance Corporation, Tex.Civ.App., 96 S.W.2d 814; City of Dayton v. Allred, 123 Tex. 60, 68 S.W.2d 172; Sowell v. Griffith, Tex.Com.App., 294 S.W. 521.

We find no provision in the Constitution of Texas requiring the submission to the voters of a City the proposition to issue bonds. The statute which is now known as Art. 701, V.A.C.S. was enacted in 1899. Moller v. City of Galveston, 23 Tex.Civ.App. 693, 57 S.W. 1116. In City of Corpus Christi ex rel. Harris v. Flato, Tex.Civ.App., 83 S.W.2d 433 it was held that a city with a population of over 5,000 may issue revenue bonds pursuant to Arts. 1111 and 1112 V.A.C.S. without submitting the proposition to the voters. See also Womack v. City of West University Place, Tex.Civ.App., 32 S.W.2d 930. In the instant case the City proposes to proceed according to Art. 1269j, V.A.C.S. It has a right to do so. Appellants' points eight and ten are overruled.

Appellants' ninth point is to the effect that the court erred in holding that appellants were estopped to seek an injunction and that appellee was not estopped to build the runway. According to appellants the pleadings of the parties raise fact questions which must be settled before the pleas of estoppel may be determined.

We find nothing in the record to indicate that the trial court made any specific findings or conclusions in regard to estoppel. The court based its judgment on the legal prin-

ciples which we have heretofore discussed in this opinion, which we believe to be correct conclusions, and fully support the court's judgment. Appellants' ninth point is overruled.

In their eleventh point appellants say that the record presents genuine issues of material fact, therefore the summary judgment was not proper. In their argument under this point appellants list eleven alleged fact issues. We have carefully considered each of the alleged fact issues. We cannot agree with appellants. The alleged fact issues either present questions of law or present matters which are immaterial in view of applicable legal principles. Appellants' eleventh point is overruled.

In a well prepared brief appellants cite more than one hundred cases which they say support their position in this controversy. We shall undertake to discuss here only a few of these cases.

In United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 the Supreme Court of the United States was concerned with Title 49, § 180, U.S.C.A. which authorized the Civil Aeronautics Authority to prescribe minimum safe altitudes of flight, the statute further providing that "navigable airspace" should mean airspace above said minimum. The Authority had prescribed 500 feet as the minimum during the day and 1,000 at night for air carriers. The statute was later repealed. In its stead Title 49, § 1301, par. 24 was enacted and is now in effect. The latter statute expressly provides that " 'Navigable airspace' * * * shall include airspace needed to insure safety in take-off and landing of aircraft." Thus by Act of Congress the minimum of navigable airspace was changed. There is no showing here that the City of Dallas, by constructing the proposed runway, will violate Title 49, § 1301, par. 24, U.S.C.A. the the statute now in effect. Moreover, the Causby case, supra, involved a claim for damages, not injunctive relief.

Brazos River Conservation & Reclamation District v. Costello et al., 135 Tex. 307, 143 S.W.2d 577 involved an actual physical taking of the property owners' land by flood waters creating what is now known as Possum Kingdom Lake. In the instant case we have no physical taking of appellants' property.

Koslosky v. Texas Electric Service Co., Tex.Civ.App., 213 S.W.2d 853, 854 involved an undertaking to build a power line under a grant from a County Commissioners Court. The grant was held to be void among other reasons because the County had no authority to make the grant since power and control of City streets is lodged in the City not the County.

Appellants cite several cases in which condemning authorities were enjoined from proceeding with operations which were declared to be void. We do not disagree with such holdings. We simply say that the laws under which the City is proceeding are not void, so the cited cases are not applicable.

We find no material error in the trial court's judgment.

The judgment is affirmed.