

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 20, 1974

The Honorable Joe Resweber                    Opinion No. H- 310
County Attorney
Harris County Courthouse                       Re: May Harris County Com-
Houston, Texas   77002                         missioners court constitutionally
                                               issue revenue bonds under Clean
                                               Air Financing Act?

Dear Mr. Resweber:

You have requested our opinion as to whether the Harris County
Commissioner's Court, acting as the "governing body" of an "issuer"
(as those terms are used by the Texas Clean Air Financing Act), may
authorize issuance of "revenue" bonds to finance the acquisition or
construction of an air control facility.

The Texas Clean Air Financing Act, newly enacted in 1973, is
codified as Article 4477-5a, V. T. C. S.  Generally, it complements the
Texas Clean Air Act, Art. 4477-5, V. T. C. S., and provides a means
by which local governmental units may finance the construction of air
pollution control facilities by issuing tax-exempt bonds to be repaid or
retired out of the revenues of the new facilities, or of certain public
systems, and not out of tax revenues.  See § 5 (h).  Section 4 (a) of the
Clean Air Financing Act reads:

> "Sec. 4 (a). Each issuer is authorized to acquire,
> construct, and improve, or cause to be acquired, con-
> structed, and improved, control facilities.  The issuer
> is also authorized to acquire real property as deemed
> appropriate by the issuer for the control facilities.
> Such control facilities may be located upon property
> owned by the issuer or upon property of another person
> or persons.  The issuer is authorized to enter into leases

or other contracts with persons whereby such persons
shall use or acquire control facilities of the issuer.
The issuer is authorized to sell such facilities to any
person or persons including a person or persons using
such facilities, such sale to be by installment payments
or otherwise and upon such conditions as the issuer deems
desirable. "

The definition of "governing body, " with reference to an issuer,
expressly includes a commissioners court [§ 3(6)].   The term "issuer"
expressly includes a county [§ 3(7)].   If a county is to be the issuer, the
control facilities must be located wholly or partially within its boundaries
[§ 4(d)].

Your request letter to us states:

"The peril upon which the Commissioners Court
hesitates relates to whether or not this Act would violate
Texas Constitutional Law inasmuch as it may be
viewed as authorizing the granting of public credit in
aid of an individual, association or corporation. "

Article 11, § 3, of the Constitution, which has been a part of the
Constitution of Texas since it was adopted in 1876, reads:

"No county, city, or other municipal corporation
shall hereafter become a subscriber to the capital
of any private corporation or association, or make
any appropriation or donation to the same, or in
anywise loan its credit; but this shall not affect any
obligation heretofore undertaken pursuant to law. "

Article 3, § 52, of the Constitution presently reads:

"(a) Except as otherwise provided by this section,
the Legislature shall have no power to authorize any

> county, city, town or other political corporation or
> subdivision of the State to lend its credit or to grant
> public money or thing of value in aid of, or to any
> individual, association or corporation whatsoever,
> or to become a stockholder in such corporation, associa-
> tion or company. "

This section, last amended in 1970, contains no express authoriza-
tion to issue bonds for the construction, maintenance or operation of air
pollution control facilities, but the absence of such a constitutional
authorization for tax bonds is held not determinative of the power of a
political subdivision to issue revenue bonds.    Atkinson v. City of Dallas,
353 S. W. 2d 275 (Tex. Civ. App. --Dallas 1961, error ref'd, n. r. e. ).
Cf. Lower Colorado River Authority v. McGraw, 83 S. W. 2d 629 (Tex.
1935). The reason is that revenue bonds do not pledge to bondholders the
full resources of government (the public credit) for their repayment.
Only certain revenues, excluding taxes, are pledged to repay them, and
the governmental issuer of the bonds has no liability if the pledged reve-
nues prove insufficient.

Section 5 (h) of the Clean Air Financing Act specifies:

> "All such bonds or notes shall be special obligations
> payable solely from the revenues pledged to their
> payment and shall not be considered general obligations
> of the governing body, an issuer, or the State of Texas.
> The holder of the bonds shall never have the right to
> demand payment from moneys derived by taxation or
> any other revenues of the issuer except those revenues
> pledged to the payment of the bonds or notes. "

You have not provided us particulars, so we cannot specifically
answer in response to the Harris County plans as to whether those plans
amend or would not constitute an improper lending of credit or an improper
grant. Generally it can be said that when a public body properly issues
revenue bonds to construct a revenue producing facility to be owned by it,

the operation of which is reasonably necessary or desirable for the health and welfare of its general constituency, the courts will ordinarily conclude that the public body's expenditure is for a proper public purpose and not an improper grant or an improper loan of credit to the users of the facility from which the revenue is derived, and this, even if some private corporation is incidentally benefited. See Brazos River Authority v. Carr, 405 S.W. 2d 689 (Tex. 1966); Atkinson v. City of Dallas, 353 S.W. 2d 275 (Tex. Civ. App. Dallas, 1961, error ref'd, n.r.e.).

We can advise, therefore, than an improper grant of public funds does not necessarily occur just because a public body accomplishes its purpose through the agency of a private person or organization. See Barrington v. Cokinos, 338 S.W. 2d 133 (Tex. 1960); State v. City of Austin, 331 S.W. 2d 737 (Tex. 1960). These cases hold that the State, where it exercises its police powers, has discretion to share the expenses where the public purpose is served and there is no net gain to the individual. And see, Brazos River Authority v. Carr, 405 S.W. 2d 689 (Tex. 1966).

In this area, the constitutional restrictions on "grants" of public money or things of value to individual or corporations and those restrictions on "lending the public credit" are analyzed by Texas courts in the same way. A "public benefit" is presumed to flow from the utilization of public funds or credit for a proper "public purpose." The existence of a proper public purpose in any given case must be measured by the specific plans and arrangement called for in such case. In each instance it is a mixed question of law and fact which can be ultimately and finally determined only by the courts, though much deference will be given to legislative expressions on the matter. See Davis v. City of Lubbock, 326 S.W. 2d 699 (Tex. 1959). Compare State ex rel Hammermill Paper Co. v. La Plante, 205 N.W. 2d 784 (Wis. 1973) with State v. City of York, 82 N.W. 2d 269 (Neb. 1957) and with Cosentino v. City of Omaha, 183 N.W. 2d 475 (Neb. 1971). The courts would undoubtedly give considerable weight to the fact that the Legislature has specifically provided that "the

holder of the bonds shall never have the right to demand payment from moneys derived by taxation or any other revenues of the issuer except those revenues pledged to the payment of the bonds or notes. "

We are of the opinion that, generally, a commissioners court may issue revenue bonds under the Clean Air Financing Act, Art. 4477-5a, V. T. C. S. However, it is possible that the facts of a particular case will cause the issuing of such bonds to be unconstitutional. Travelers' Ins. Co. v. Marshall, 76 S. W. 2d 1007, 1010 (Tex. 1934).

In answer to your inquiry, therefore, we can only reply that, generally the Harris County Commissioners Court may legally and constitutionally authorize the issuance of revenue bonds to finance the acquisition or construction of an air control facility. However, not every arrangement made purportedly for that purpose would be legal or constitutional. The details of the written arrangement would control.

## SUMMARY

Generally a commissioners court may issue revenue bonds under the Clean Air Financing Act, but whether a specific issue is valid will depend on the specific arrangements of each case. Much reliance will be placed on the legislative mandate that the bonds provide that their repayment be made solely from revenues of the issuers and not from monies derived from taxes.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee